Barker *v.* Bucklin.

---

### BARKER *vs.* GEORGE R. BUCKLIN.

An action may be maintained on a promise made by the defendant to a third person for the benefit of the plaintiff without any consideration moving from the plaintiff.

Accordingly where B., being indebted to the plaintiff, sold property to the defendant who agreed to pay the price of it to the plaintiff, on account of his demand against B., *held*, that the plaintiff might maintain an action against the defendant on such promise.

Such agreement is not a promise to answer for the debt of a third person, and therefore is not required to be in writing.

There is a distinction between a promise to pay one's own debt to a third person instead of his own creditor, the latter agreeing that the payment shall be so made in order to discharge his debt to such third person—and an agreement to pay the debt of another person to the creditor of such person upon some other consideration. The *first* is not within the statute of frauds; the latter *is* and is void even if made upon a new and distinct consideration, unless it be also in writing and express such consideration. *Per* JEWETT, J.

The cases of *Simpson* v. *Patten*, (4 *John.* 422,) and *Jackson* v. *Rayner*, (12 *id.* 291,) commented on and explained. *Per* JEWETT, J.

ASSUMPSIT, tried at the Chautauque circuit in June, 1844. The suit was brought to recover money due to the plaintiff from Francis B. Bucklin, a brother of the defendant. The three special counts in the declaration averred that the defendant in consideration of a pair of horses delivered to him by Francis, and

of forbearance by the plaintiff to prosecute Francis for the debt at the defendant's request, had promised the plaintiff to pay him the value of the horses towards the debt which Francis owed the plaintiff. Plea, *non-assumpsit.*

The plaintiff gave in evidence a bond executed by Francis Bucklin to him, conditioned for the payment of $372,17 by instalments, all of which had become payable before the transactions afterwards mentioned; and a letter signed by the defendant, as follows:

"Little Falls, Nov. 1, 1842.

Esq. Hazeltine—Sir: My brother Francis has been to see me and brought his team down to sell, to make up some money for you. Every effort has been made to sell them but in vain. I have sold my place since he has been here, and I get no money till spring. I am coming out in the spring, as soon as navigation opens, to settle in your country. I have taken my brother's team and will be accountable to you for the same if you will be so good as not to trouble him, of which I presume you will not, according to the recommendation I have of you by your most esteemed Francis B. Bucklin.    Yours with respect,

GEORGE R. BUCKLIN."

It was proved that the bond in question had been placed by the plaintiff in the hands of Mr. Hazeltine of Jamestown, an attorney, for collection. F. B. Bucklin testified on the part of the plaintiff, that being pressed by Hazeltine for payment, he took his horses to Herkimer county with a view to sell them to raise money to pay the bond; but not finding a purchaser, he took them to the defendant who received them and agreed to pay upon the demand in the hands of Mr. Hazeltine $160 on account of the debt due from the witness, that being the price agreed upon for the horses between the defendant and the witness, and the defendant on that occasion gave him the letter, with which he immediately returned to Chautauque county and delivered it to Mr. Hazeltine and informed him of the arrangement with the defendant and he agreed to give time; but this did not appear to have been communicated to the defendant. In the spring of 1843 the defendant removed to Chautauque county,

when the witness informed him that the letter was in Mr. Hazeltine's hands, and that the witness had not been sued on the bond. The defendant said if he had got his money for the farm he would have paid for the horses, but he had been disappointed and could not pay until he should receive it, which would be in about two years. The witness informed Mr. Hazeltine of this, but not at the defendant's request.

Mr. Hazeltine testified that he was about to prosecute on the bond as the attorney for the plaintiff who lived in Wisconsin, when Francis delivered him the defendant's letter, upon receiving which he agreed to give time for payment as requested in the letter, and that he had no other demand in his hands against Francis B. Bucklin.

The defendant moved for a nonsuit, insisting that an action could not be brought in the name of the plaintiff, the promise being made to Hazeltine; that the engagement contained in the letter was to *be accountable for the horses*, which only constituted him a bailee of the property, and that the letter contained only a *proposition* to be accountable for the horses on condition of forbearance to sue Francis, and that to render it binding on the defendant he must have had notice that it was accepted, which had not been shown. The judge directed a nonsuit. The plaintiff now moves for a new trial on a case.

*B. D. Noxon*, for the plaintiff.

*N. Hill Jr.*, for the defendant.

*By the Court*, JEWETT, J. The first question which I shall consider is, whether the plaintiff under a count adapted to the case can sustain an action to enforce the defendant's promise to pay the price of the horses which he purchased. This involves the question, whether in cases of simple contracts, where one makes a promise to another, for the benefit of a third person, he can maintain an action upon it, though the consideration does not move from him. Upon this question, the adjudged cases in England are somewhat contradictory. That such promises are

Barker *v.* Bucklin.

binding, all agree.   The difficulty seems to be as to which party has the right of action.   There is a class of cases in which it is held that as between the plaintiff and defendant there must be a privity of contract, and if the plaintiff is a stranger to the consideration, and no promise is made by the defendant to him, he cannot maintain an action although a promise has been made to pay the plaintiff.   *Bourne* v. *Mason*, (1 *Ventr. Rep.* 6,) was an action of assumpsit.   The plaintiff declared that one Parrie was indebted to him and the defendants in two several sums of money, and that a stranger was indebted in another sum to Parrie ; that there being a communication between them, the defendants in consideration that Parrie would permit them to sue the stranger in his name, for the sum due to him, promised that they would pay the sum which Parrie owed to the plaintiff; and alleged that Parrie permitted them to sue, and that they recovered.   After verdict for the plaintiff, it was moved in arrest of judgment, that the plaintiff could not bring this action ; for he was a stranger to the consideration.   In behalf of the plaintiff a judgment was cited in 1658, between Sprat and Agar, in the king's bench, where one promised to the father, in consideration that he would give his daughter in marriage with his son, he would settle so much land.   After the marriage the son brought the action, and it was adjudged maintainable.   And another case was cited, of a promise to a physician that if he did such a cure he would give such a sum of money to himself, and another to his daughter, and it was resolved, that the daughter might bring an assumpsit; to which cases the court agreed ; "for in the one case the parties that brought the assumpsit did the meritorious act, though the promise was made to another ; and in the other case the nearness of the relation gives the daughter the benefit of the consideration performed by her father.   But here the plaintiff did nothing of trouble to himself, or benefit to the defendant, but is a mere stranger to the consideration."   It was therefore adjudged that the plaintiff take nothing by his bill.   In *Crow* v. *Rogers*, (1 *Stra.* 592,) one H. was indebted to the plaintiff, and the defendant promised to pay H.'s debt to the plaintiff, if H. would assign his interest

in a house to the defendant, and H. assigned, (or offered to assign, which was tantamount in law,) yet it was held that the plaintiff could not recover on this promise, because he was a stranger to the consideration.

The principle contained in these cases was recognized and approved in the case of *Price* v. *Easton*, (4 *Barn. & Ald.* 433.) The declaration stated that W. P. owed the plaintiff £13, that in consideration thereof, and that W. P. at the defendant's request, had promised the defendant to work for him at certain wages, and also in consideration of W. P. leaving the amount which might be earned by him in the defendant's hands, he the defendant undertook and promised to pay the plaintiff the said sum of £13; averment, that W. P. performed his part of the agreement; breach, non-payment to the plaintiff of the £13. After verdict for the plaintiff on plea of the general issue, a motion in arrest of judgment was made, on the ground that the plaintiff was a mere stranger to the consideration. Denman, Ch. J. said: "I think the declaration cannot be supported, as it does not show any consideration for the promise moving from the plaintiff to the defendant." Littledale, J. said: "No privity is shewn between the plaintiff and defendant. This case is precisely like *Crow* v. *Rogers*, (1 *Str.* 592,) and must be governed by it." Taunton, J. said: "It is consistent with all the matter alleged in the declaration, that the plaintiff may have been entirely ignorant of the arrangement between William Price and the defendant."

The case of *Lilly* v. *Hays*, (5 *Adol. & Ellis*, 548,) recognizes as sound law the principle stated in the case of *Crow* v. *Rogers*, and others of that class. But a distinction is made between those cases and the one then under consideration, the court holding that the debtor in this case, in advancing the money which was the subject of the action to the defendant to be paid to the plaintiff, his creditor acted as the agent of the plaintiff, and thus that the consideration for the promise moved from the plaintiff. It is not very apparent how it could be said to move from the plaintiff. The action was for money had and received, and on an account stated. The case was this: one Wood was indebted to

the plaintiff in £100, lent on his acceptance at two months; Wood also owed money to the defendant. When the plaintiff's bill became due, Wood was in Scotland. Some days after the maturity of the bill, the defendant said to a witness that he had received £100 from Wood, but did not know exactly what bill it was to take up. In a conversation afterwards between the plaintiff and defendant, the latter said he had received some money from Wood, but Wood owed him 40 or £50. Another witness stated that having received a letter from Wood (after the plaintiff's bill had matured) he called on defendant and said to him, "I have heard from Wood with regard to the bill, about what you before spoke to me," (which the witness explained as referring to an occasion on which defendant had told witness that he had received a £100 bill and asked him what he should do with it, saying that he had had no specific directions, that Wood owed him money, but it could not be for that as it would not be due for some months.) The witness then told defendant, that Wood said the £100 was for the plaintiff; upon which the defendant said it should be immediately paid. The defendant's counsel objected that there was no proof of the defendant having authorized either of the witnesses to communicate the above statements to the plaintiff, and that nothing had been shown upon which the plaintiff could ground a promise by the defendant to pay him the £100. The Lord Ch. J. left it to the jury whether or not the defendant had authorized a statement to the plaintiff that he had received £100 to his use. The jury found for the plaintiff. On a motion for a rule to show cause why a nonsuit should not be entered, it was urged that there was no consideration moving from the plaintiff to the defendant for a promise by the latter to pay the £100 received to the plaintiff's use, and that the rule to be collected from *Williams* v. *Everett*, (14 *East*, 582,) and other cases was, that an action for money had and received does not lie when money has been sent to the defendant with a direction to pay it to the plaintiff, unless something further has been done before the commencement of an action, to constitute a privity between the defendant and the plaintiff. Wood might have recalled the £100 at any time

while it remained unpaid.  The defendant held it to his use.  Patteson, J. observed: "It appears in this case, that the defendant had stated, in effect, that he held the £100 to the plaintiff's use; and had allowed him to be told so.  The only question is, upon the alleged want of a consideration moving from the plaintiff. It is true that the rule of law requires such a consideration in all cases; though in an action for money had and received, a direct consideration moving from the plaintiff is seldom shown. But suppose that a debtor sent money to a general agent for the creditor, would there be any doubt that, as soon as the agent received it, he would be accountable to the creditor for it, as money had and received to his use?  Would it be an answer that there was no consideration moving from the creditor to the agent?  Or is it not a consideration if the money is sent to a general agent for the creditor, and received by him, he informing the creditor of it?  That is the case here.  The money was sent by Wood to the defendant, he admitting holding it for the plaintiff's use, and said he would pay it to him.  There is a consideration moving then, through the instrumentality of Wood, the original debtor to the defendant, as agent for the plaintiff."  Williams, J. Coleridge, J. and Lord Denman, Ch. J. were of the same opinion.

*Chitty, Jun. on Contracts, ed. of 1842, p. 53,* says: "The cases seem to have been contradictory (though it is now a rule of law which has been recognized in several cases, that the consideration for a promise must move from the plaintiff) upon the question, whether a person can sue upon a promise, even though it be professedly for his benefit, when he is an entire stranger to the consideration, that is, has taken nothing of trouble or charge upon himself, or occasioned any benefit to the promisor, but such trouble has been sustained or advantage conferred by a third person."

On the other hand, that a party to be benefited by the promise may sustain an action on it, although a stranger to the consideration, is sustained by numerous cases of high authority, both in the courts in England and here.  I will refer to a few of them. *Dutton* v. *Poole,* (1 *Ventr.* 318, 332,) decided in the king's bench

and affirmed on error in the exchequer chamber, (*T. Raym.* 302,) is a leading case sustaining the proposition. The father of the plaintiff's wife, being seized of certain lands which prior to the time of the suit had descended to the defendant, and being about to cut £1000 worth of timber off from the said lands to raise a portion for his said daughter, the defendant promised the father, in consideration that he would forbear to fell the timber, that he would pay the said daughter £1000. After verdict for the plaintiffs upon non-assumpsit, it was moved in arrest of judgment that the father ought to have brought this action and not the husband and wife. The point was largely debated, and it was held that the daughter might maintain an action on the promise. The court said, "it might be another case, if the money had been to have been paid to a stranger; but there is such a nearness of relation between the father and child, and it is a kind of debt to the child to be provided for, that the plaintiff is plainly concerned." Lord Mansfield, in *Martyn* v. *Hind,* (*Cowp.* 443,) said it was a matter of surprise how a doubt could have arisen in that case; and Buller, J. in *Marchington* v. *Vernon,* (1 *Bos. & Pul.* 101, *note b,*) said, "independent of the rules which prevail in mercantile transactions, if one person makes a promise to another for the benefit of a third, that third person may maintain an action upon it." In note (*a*) to the case of *Piggott* v. *Thompson,* (3 *id.* 149,) it is stated that "with respect to the right of a third person to sue upon a parol promise made to another for his benefit, there is great contradiction among the older cases, all which are collected 1 *Vin. Abr. p.* 333 *to* 337, *Actions of Assumpsit,* (Z.) But in *Dutton* v. *Poole,* (29 *Car.* 2, 2 *Lev.* 210, 1 *Vent.* 318,) the point seems to have been very fully considered and very solemnly decided." "In that case, indeed, some stress was laid upon the nearness of relationship between the plaintiff's wife and her father, to whom the promise was made; but another case has since occurred to which that reason does not apply." Lord Alvanley, Ch. J. in *Piggott* v. *Thompson,* said, "It is not necessary to discuss whether if A. let land to B., in consideration of which the latter promises to pay the rent to C. his executors and administrators, C. may

maintain an action on that promise. I have little doubt, however, that the action might be maintained, and that the consideration would be sufficient." Abbott, Ch. J. in *Carnegie* v. *Waugh*, (2 *Dowl. & Ryl.* 277,) said : " But at any rate this is not a deed under seal, and I am not aware of any case which has extended the rule, that a third person cannot take advantage of a deed inter partes, to contracts not under seal." Mr. Chitty, in his treatise on pleading, (*vol.* 1, *p.* 5,) states the rule thus : " When a contract not under seal is made with A. to pay B. a sum of money, B. may sustain an action in his own name; but if the promise had been to pay A. for the use of B., A. is a trustee, and B. having no legal interest, cannot sue."

A writer in the *American Jurist*, (*No.* 43, *pp.* 16, 17,) has ably reviewed many of the cases on this subject, and comes to the conclusion that " It is now well settled, as a general rule, that in cases of simple contracts, if one person makes a promise to another, for the benefit of a third, the third may maintain an action upon it, though the consideration does not move from him."

I think the rule is settled in the same way by this court. In *Schemerhorn* v. *Vanderheyden*, (1 *John. R.* 140,) the plaintiff declared on a promise made by the defendant to one John C. Schemerhorn, to deliver a cherry desk, of the value of $25, to the plaintiff's wife. It was objected that no action could be maintained by the plaintiff on a promise made by the defendant to John C. Schemerhorn. The court said, " We are of opinion that where one person makes a promise to another for the benefit of a third person, that third person may maintain an action on such promise. This was the doctrine of the king's bench in the case of *Dutton and wife* v. *Poole*, (2 *Lev.* 210,) affirmed in error. The same principle has, since that time, been repeatedly sanctioned by the decisions of the English courts. (*Vide* 3 *Bos. & Pul.* 149, *in the notes to Piggot* v. *Thompson.*")

The decision in the case of *Gold & Sill* v. *Phillips*, (10 *John. Rep.* 412,) proceeded upon the same principle. One Wood being indebted to the plaintiffs for services as attorneys, rendered for him on his retainer, sold and conveyed a farm to the defen-

dants for the price of $4210, for the payment of which the defendants executed their bond with their mortgage upon the premises to Wood, in which the time and manner of payment was specified. A certain sum was to be paid to Wood, the residue was made up of different debts specified in the bond, which the defendants were bound to pay ; they were also bound to pay the plaintiffs their demand for costs against Wood, which as the witness thought, was specified in the bond. The defendants addressed a letter to the plaintiffs in which they informed them that " an arrangement has been made between us and Aaron Wood, by which we are to be accountable to you for the balance due from him to you on account." A verdict was taken for the plaintiffs subject to the opinion of this court. The court held that " the promise of the defendants was not within the statute of frauds. It had no immediate connection with the original contract, but was founded on a new and distinct consideration. The distinction noticed in *Leonard* v. *Vredenburgh*, (8 *John. R.* 39,) applies to this case and takes it out of the statute. The defendants made the promise in consideration of a sale of lands made to them by Aaron Wood ; and they assumed to pay the debt of the plaintiffs, as being by arrangement with Wood, part payment of the purchase money. Here was a valid assumption of the debt of Aaron Wood." The same rule is again recognized in *Shear* v. *Mallory*, (13 *John.* 496.) The case came into this court on certiorari to a justice's court, where the defendants in error, as overseers of the poor, brought an action against the plaintiff in error on a promise alleged to have been made by him for the maintenance of a bastard child, born of the body of his daughter. The defendant below had taken out a warrant against the putative father of the child. On his arrest the defendant settled with him and no further proceedings were had against the putative father. The defendant below at several times had acknowledged that he had to maintain the child. The plaintiffs below as overseers had expended money in the support of the child, and they recovered before the justice. This court said, " The promise made by the defendant below, to maintain the bastard child, cannot be made to enure to the benefit of the

plaintiffs below.  In general, it is necessary that the considera-
tion on which a promise is founded should move from the party
in whose favor the promise is made.  There are some cases,
however, where a party in whose favor the promise is made
may maintain an action, although the consideration moves from
another person; but in the present case the consideration did
not move from the plaintiffs below, nor was the promise made
to them or for their benefit.  It does not appear that they were
the overseers of the poor at the time the putative father was pro-
ceeded against; and admitting that the promise to maintain the
child enured to the benefit of the then overseers, they are not a
body corporate, so that their successors can sue in their own
name upon such promise."  Chancellor Kent, in *Cumberland*
v. *Codrington*, (3 *John. Ch. Rep.* 254,) recognized the rule as
sound, that if one person makes a promise to another for the
benefit of a third, that third person at law may maintain an ac-
tion on the promise; and for this he cited *Dutton and wife* v.
*Poole,* (*supra ;*) *Starkey* v. *Mill,* (*Styles,* 296 ;) *Martyn* v. *Hind,*
(*Cowp.* 437 ;) *Marchington* v. *Vernon,* (1 *Bos. & Pul.* 101, *note,*)
*Lord Alverly, in* 3 *id.* 149, *and note ; Schemerhorn* v. *Van-
derheyden,* (*supra.*)  The case of *Farley* v. *Cleveland,* (4 *Cowen,*
432,) was this : One Moon was indebted to the plaintiff in $100,
for which the plaintiff held his promissory note.  After the ma-
turity of the note, Moon sold and delivered to the defendant
Cleveland a quantity of hay of the value of $150, in considera-
tion of which Cleveland promised to pay the note of Moon to the
plaintiff.  The declaration counted specially on this contract.
The promise was by parol.  The plaintiff was nonsuited in the
common pleas, where the action was brought, on the ground
that the promise being to pay the debt of another, and not in
writing, was void within the statute of frauds.  Error being
brought to this court, the judgment was reversed.  Savage, Ch. J.
in delivering the opinion of this court, reviewed some of the
leading cases adjudged in England and here, upon the question
whether such promise was within that part of the statute of
frauds which provides that " no action shall be brought whereby
to charge the defendant upon any special promise to answer for

the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing," and came to the conclusion that "In all these cases, founded upon a new and original consideration of benefit to the defendant, or harm to the plaintiff, moving to the party making the promise, either from the plaintiff or the original debtor, the subsisting liability of the original debtor is no objection to the recovery." This judgment was affirmed on error in the court for the correction of errors. (9 *Cowen,* 639.) This principle seems to be well settled in several of our sister states. In *Arnold* v. *Lyman,* (17 *Mass. R.* 400,) Parker, Ch. J. said, "Generally he for whose interest a promise is made may maintain an action upon it, although the promise be made to another and not to him." And again, in *Cabot* v. *Haskins,* (3 *Pick.* 91,) the same learned judge said, "We think there is no doubt, if A. advances money to B., who in consideration thereof at A.'s request promises to pay C., that C. may maintain an action upon this promise." And so in *Crocker* v. *Higgins,* (7 *Conn. R.* 347,) Hosmer, C. J. said, "Even in a court of law, where the question is embarrassed by considerations somewhat artificial and technical, it is now established that a third person may maintain a suit on a parol promise made for his benefit, although he is not a party to the contract." "In other words it is a decided point that such person has a legal right or title arising out of the promise." The same rule is recognized in *Hind* v. *Holdship,* (2 *Watts,* 104.)

Some of the cases already referred to bear upon the objection arising out of the provision in the statute of frauds requiring agreements to pay the debt of another to be in writing. That objection being insisted on by the defendant's counsel, will be more fully considered.

The cases of *Simpson* v. *Patten,* (4 *John.* 422,) and *Jackson* v. *Rayner,* (12 *id.* 291,) are relied on by the counsel for the defendant to sustain the position that the defendant's promise is within the provisions of the statute of frauds, (2 *R. S.* 135, § 2 *sub.* 2,) and therefore void. Both of those cases came here on certiorari from a justice's court. In the former, Patten sued

Barker *v.* Bucklin.

Simpson on a promise that if he (Patten) would forbear to sue one J. S., the defendant would pay Patten the amount of a note of J. S. to Patten then due, as soon as he could sell an acre of land belonging to J. S. which he was authorized to sell; averring that Simpson did sell the acre of land for $50. The plaintiff recovered before the justice, although the promise was by parol. This court reversed the judgment, holding that " a promise to pay the debt of a third person must be in writing, notwithstanding it is made on a sufficient consideration." I see no conflict between any principle decided in this case and the doctrine of any other case referred to. It is no where denied at this day, under our statute, but that a promise to the creditor to pay the debt of a third person, to be upheld, must not only be made upon sufficient consideration, but that the agreement expressing the consideration must be in writing. In that case, it is apparent that when Simpson made the promise he had not received any consideration; he had not then sold the acre of land, nor was the promise in writing. In *Jackson* v. *Rayner* the facts were these : Rayner held a note made by one M. Jackson, a son of the defendant, which had been endorsed by one Edson. Rayner sued M. Jackson on the note by warrant. When the constable was about to serve the warrant, the defendant told the constable " not to serve the warrant, for he the defendant would pay the debt if an honest one ;" upon which Rayner being satisfied, withdrew his suit. Soon after, the defendant saw the constable and told him to tell Rayner " to give himself no further trouble about it, for he would pay the debt; as he had taken his son's property and meant to pay his honest debts." This suit was for the amount of the note, and there being no note in writing of the new promise, Jackson relied on the statute of frauds. The justice however rendered judgment for Rayner, which was reversed in this court. " The fair construction (say the court) of the parol proof in this case is, that the defendant had received an assignment of his son's property, in trust, for the payment of his son's debts; and from that fund he promised to pay the debt now in question. He is to be regarded as a trustee for the creditors of his son ; and his absolute promise to this creditor is evi-

dence that the fund was adequate. *But the original debt of the son was still subsisting*, and according to the decision in the case of *Simpson* v. *Patten*, (4 *John.* 422,) and the authorities there cited, it seems well settled that a promise to pay the debt of a third person must be in writing notwithstanding it is made on a sufficient consideration." This case also, I think, was well decided, and it does not as has been supposed, conflict with that of *Farley* v. *Cleveland*, unless it may be supposed that the fact that the original debt of the son being still subsisting, influenced or controlled the decision. It is quite clear to me that that case is well sustained on the ground that the promise of Jackson was to pay the debt of a third person and not a promise to pay a debt contracted by him with his son, to the creditor of his son. The defendant had not contracted a debt by becoming the assignee of certain property of his son for the benefit of his creditors. He had taken upon himself the discharge of a trust only ; his promise, whatever it was, was purely to pay the debt of the plaintiff, a third person, founded upon no consideration of benefit to him, not evidenced by any note or memorandum in writing, and was therefore clearly within the statute of frauds.

The case of *Farley* v. *Cleveland* was not the case of a promise to pay the debt of a third person. The promise of Cleveland was to pay to Farley for Moon a sum of money which Moon owed him, which Cleveland owed Moon for hay purchased of and delivered to him by Moon at the time of the promise, legitimately involving no question under the statute of frauds, but merely the question whether a person can sustain a suit upon a promise made to another for his benefit, he being a stranger to the consideration.

The case at bar is a parallel case with *Farley* v. *Cleveland*, so far as the principle upon which the plaintiff's claim and defendant's liability rest. The defendant, as appears by the evidence of Francis B. Bucklin, purchased of the witness a pair of horses at the price of $160, which he agreed to pay to the plaintiff to be applied upon a debt owing by the witness to him, involving, as I think, no question under the statute of frauds, but merely the question whether, where one person makes a promise

to another for the benefit of a third, the third may maintain an action upon it, though the consideration does not move from him.

In *Ellwood* v. *Monk*, (5 *Wend.* 235,) the question arose on demurrer.   The case made by the second special count of the declaration was this : The plaintiff was the payee and holder of three notes made by one Johannes Monk, each for a quantity of hemlock boards, dated in November, 1819, and payable in January, 1822, 1823 and 1824.   On the 1st of January, 1823, the defendant Jacob Monk, in consideration that Johannes Monk then gave and delivered to him a large portion of property of great value, to wit, of the value of five hundred dollars, undertook and promised to pay among certain creditors named of said Johannes, the said demand of the plaintiff arising upon said notes, averring that the plaintiff's demand against Johannes was three hundred dollars, and that he confiding in the defendant's promise, stayed all proceedings and the collection of his debt against Johannes.   The court held that the contract set forth was obligatory upon the defendant, without being reduced to writing.   It was said, however, that " the promise was to pay the debt of a third person, but yet it is not within the statute of frauds, being made upon a new and distinct consideration," citing *Farley* v. *Cleveland* as authority for that principle. I agree that the case was well decided; but as I think a wrong reason was given for it.   It is difficult, it seems to me, to hold that a particular promise is to pay the debt of a third person and obligatory on the promisor, and not within the provisions of the statute of frauds, although not in writing, because it is founded upon a new and distinct consideration.   The idea of the necessity of a new consideration to uphold a promise of one person to pay another's debt, I apprehend is only applicable to such prom·ise made in a negotiation between the creditor and such person proposing to pay the debt of another to the creditor; there it is well settled that a promise by such person even in writing to pay a debt already incurred, is not available if there be no new consideration.   (*Chitty, jun. on Contracts, ed. of* 1842, *p.* 52; *Leonard* v. *Vredenburgh*, 8 *John.* 29.)   And where there is a new consideration for a promise by one to pay the debt of an-

other, the promise is void by the provisions of the statute, unless the agreement, or some note or memorandum thereof expressing the consideration shall be in writing.   An agreement on the part of a creditor to forbear to sue a debtor, is a good consideration to uphold a promise of a third person to pay the debt; so undoubtedly a like promise to a creditor in consideration of the transfer by the creditor to the promisor of property would be available to the creditor, if such agreement should be in writing as provided by the statute; but otherwise the agreement would be void, notwithstanding the new and distinct consideration for such promise.   To constitute a valid agreement to pay the debt of another, therefore, there must be not only a good consideration, but the agreement must be in writing and must express the consideration.   Both ingredients must concur, or the agreement will be void.

There cannot be any objection arising under the statute to the enforcing a promise made upon good consideration, by a third person to a debtor, to pay his creditor a specified debt, although such agreement is not in writing.   The statute does not embrace such agreement, but only an agreement by which one party promises the other to answer for the debt &c. of another person. A special promise made by A. to B. to pay the debt of the latter to C., the creditor of B., is not within the terms or meaning of the statute of frauds, and therefore need not be in writing to be valid.   And I think it may be laid down as a rule admitting of no exception, that when a promise is made to a creditor by a third person to answer for the debt &c. of the debtor, another person, it cannot be upheld although founded upon a new con sideration from the creditor, unless the agreement between the creditor and such third person shall be in writing; and that no agreement made between a debtor and a third person by which the latter promises upon sufficient consideration to pay a debt owing by the former to his creditor, is within the statute, whether in writing or by parol.   In *Ellwood v. Monk* there was a good consideration advanced by Johannes Monk, the debtor of Ellwood, to Jacob Monk the defendant, to support his promise to pay his debt, and which Ellwood, for whose benefit the promise

was made, had a legal right to enforce.   And so in the case at
bar, the defendant's promise I think was obligatory on him,
whether in writing or by parol, and not within the statute of
frauds.   It was not a promise to answer for the debt of another
person, but merely to pay the debt of the party making the
promise, to a particular person designated by him to whom the
debt belonged, and who had a right to make such payment a
part of the contract of sale.   Such promise was no more within
the statute of frauds than it would have been if the defendant
had promised to pay the price of the horses directly to his brother
of whom he purchased them.

The testimony however does not sustain either count in the
declaration.   The contract set out in each of the special counts
is widely variant from the one proved.   The motion to set aside
the nonsuit must therefore be denied.

New trial denied.