*Court of Common Pleas, Dauphin County, April 8th,* 1861.

## KING *v.* SHOEMAKER.

When property is assigned to a person upon his promising the assignor that he will pay all his debts, such promise is binding though not in writing, as it does not come within the statute of frauds. Any creditor may bring suit against the promiser, although the promise was not made to him, and such action is a sufficient acceptance of it. The original debtor need not be discharged.

BY THE COURT.—The specical verdict in this case finds, in substance, that Harper & Reese owed King $130.59 for goods sold. That they also owed Shoemaker $485, for which he held their judgment. They owned property and effects, including some book accounts, amounting in value to $1885, which they assigned to Shoemaker for the nominal consideration of $1500 paid, but for the real consideration of the debt aforesaid, and the promise of Shoemaker to pay all the debts they owed, including that to the plaintiff, but no debts were specified. They were supposed to be, and were represented as amounting to $500 or $600, but the actual amount was found to be $1315. The only evidence of King agreeing in terms to accept the promise is implied from bringing the suit, which is found to be an acceptance, and that he was informed of Shoemaker's agreement to pay the debt soon after it was made. On the trial King released Harper, in order to render him a competent witness.

The case presents a number of important legal questions. And in the first place, we must premise that the parties to the bill of sale intended, at the time of its execution, that all of the debts of Harper & Reese should be paid. If it was executed either to protect the effects from creditors or give a false color to the assignment, it was not only fraudulent and void as to the creditors, but a highly criminal offence in the party conveying and the party receiving—one for which both could be heavily fined and imprisoned. Inserting a consideration of $1500 in the bill of sale, when but $485 was paid, is giving it a *false color* within the act of 1842, unless it was part of the contract to pay all the debts of the firm, and was intended at the time by both parties to be carried into effect. We must, therefore, out of charity to the present defendant, presume that when he accepted the bill of sale and promised to pay the debts, he intended that no creditor should go unsatisfied and no debt remain undischarged. Is there any *legal* reason why Shoemaker should not comply with his contract?

It is urged that the debts were represented to amount to only $500 or $600, whereas they are over $1300. Suppose Shoemaker had paid out $600, and an unsatisfied creditor had obtained a judgment against Harper & Reese, levied on what was formerly their goods in the hands of Shoemaker, would the creditor not

[King v. Shoemaker.]

have defeated his title by proving the colorable character of the bill of sale, ostensibly $1500, in reality $485, and the goods actually worth over $1800? A man who is largely indebted cannot be permitted to sell his property to any one at a greatly undervalue who is cognizant of the fact.

Equity could grant no relief in a case like this, when the purchaser obtained property worth more than all he could be obliged to pay for it in any event, merely because he did not get quite so good a bargain as he expected. He got the articles at less than their value, even if obliged to pay all the debts owed by Harper & Reese, and if dissatisfied with his bargain should have restored the goods to their former owners on discovering the mistake, where they would have been subject to seizure by their creditors.

We are well satisfied that there can be no deduction on account of the alleged failure of consideration, either at law or in equity, and the next question is, can the plaintiff sustain his action? Three objections are interposed: First, the want of privity, there being no promise to the plaintiff. Second, the uncertainty of the evidence, as no particular debt was named, no amount fixed, but the promise was to pay all the debts of the firm generally; and third, the promise is void by the statute of frauds and perjuries.

If one man give money to another to pay over to a third, there can be no doubt of the ability of the latter to support an action for money had and received for his use.

If goods are sold by A. to B., who promises A. to pay a debt he owes to C., the latter can maintain an action on such promise.

Where a promise is made to one person for the benefit of a third, that person can sue in his own name. 2 Lev. 210; 1 Boss. & Pull. 101, note C.; 3 Boss. & Pull. 149, in note; 1 Johns. Rep. 139; 10 Johns. 412; 15 Johns. 425; 18 Johns. 12; 2 Denio, 45; 4 Cowan, 432, affirmed in error in 9 Cowan, 639. See also Browne on the Stat. of Frauds, p. 185.

It is held in Massachusetts that where a promise is made to one for the benefit of another, he for whose benefit it is made may bring an action for the breach. 10 Mass. 290; 3 Pick. 91; 17 Mass. 404. And this case further decides that bringing suit is sufficient evidence of the creditor having accepted the promise.

The point is also ruled in Hind v. Holdship, 2 Watts, 104, which was on a similar consideration, and no more definite than the present, the defendant merely declaring, at the time of receiving the assignment of the debtor's goods, "the hands shall be paid at any rate." Plaintiff showed he was one of the hands, and it was held that he could recover. This case, though sometimes doubted, we consider sound law, and founded on general policy. The action of assumpsit being highly beneficial and equitable in its nature, should be liberally supported. This case, we conceive,

[King v. Shoemaker.]

rules both the first and second points of objection in favor of the plaintiff. See also 17 S. & Rawle, 268; 1 Rol. Abt. 32, pl. 13; Ib. 31, p. 35; Cro. Jac. 667.

We have been most liberal in supporting actions of assumpsit in Pennsylvania, to enable creditors to reach funds in the hands of others, to which the creditors have an equitable right. Aycinena v. Peries, 6 W. & S. 248; Matthews v. Stephenson, 6 Barr, 496.

The most important and difficult point in this case arises on the statute of frauds and perjuries, and as that portion of the act is comparatively new in Pennsylvania, we have not the advantage of a judicial construction by our own courts, and must, therefore, look to the decisions in England and our sister States, where it has long prevailed, for our guidance; for it is fair to presume that the legislature, in adopting the statute, did it with a view to the settled meaning of its words, and their application to particular facts, as established by the judiciary. The act declares that "no defendant shall be charged upon any special promise to answer for the debt or default of another," without a memorandum in writing, signed, etc.; and the first question presented by this special verdict is, was this a promise to answer for the debt or default of another, or did the promiser, on account of the consideration paid him, agree to make it his own debt? Our difficulty in determining as to whether the promise does or does not come within the statute, arises not from the paucity or meagreness of judicial decisions, but from its overflowing abundance and great contradiction. We must, in this conflict of authority, endeavor to select that which will best effectuate the intention of the legislature, and secure justice between man and man, by such general rules as will tend to prevent both fraud and perjury.

Roberts, in his Treatise on the Statute of Frauds, at p. 232, says: "In regard to those promises founded on the liability of a third person, that to constitute them such as are necessary to be committed to writing, the consideration should appear to have immediate respect to the liability of the person promised for. If it spring out of any new transaction, or move to the party promising upon some fresh and substantive personal concern to himself, the statute does not attach on such promise." Again, on the same page, he says: "If, therefore, the promise is founded upon a fresh, distinct consideration, moving to the party promising, it seems a perfectly established doctrine upon all the cases, that the statute does not extend to it."

That doctrine, we apprehend, must be taken with this qualification, that where there is a promise made to the original creditor, even for a new consideration moving from him, it is merely collateral to the former debt, and cannot be enforced, especially where the former obligation is not discharged. But where made

[King v. Shoemaker.]

*to* the debtor himself, for a consideration received *from him*, it is a new contract, and need not be in writing. It stands both in consideration and promise independent of the original contract, is valid as between the parties to it, and inures to the use of the creditor, because the money or goods are received for him. Almost the only doubts which can be raised in such case is as to which party can sue, some of the cases holding that when the action is brought by the original creditor it is treated as a collateral promise, but when by the debtor it is not; others that a suit can be maintained by either. In Eastwood v. Kenyon, 11 Ad. & Ell. 438, Lord Denman says: "If the promise had been made to the debtor, doubtless the statute would have applied; but upon consideration we are of opinion that it applies only to promises made to the person to whom the other is answerable." In Tomlin v. Gilld, Ambler, 330, on a bill in chancery against a person who had promised, in consideration that he should be permitted to take out letters of administration on the estate of a decedent, that he would pay all the simple contract debts, Lord Hardwick says: "The modern determinations have made a distinction between a promise to pay the original debt, on the fact of the original contract, and where there is a new consideration." He held that this was a new consideration, proceeding from the widow of the deceased, who agreed for the benefit of the creditors, and the bill was by them. The promise was general to pay *all* the simple contract debts. In Mes. & Welsby, 561, 570, it is said: "The statute applies only to a promise TO the person to whom another is indebted, or is to become so; it must be to answer for the default of the other *towards the promisee*."

When there is a new promise, for a consideration which the promisor did not have before, and could not have had but for the promise, it is binding. 1 Parsons on Contracts, pp. 497, 498, and 499, and note; vol. ii, pp. 304, 305, and 306, and note.

To come to a few of the decisions in our sister States. In New York there had been conflicting decisions for a series of years; some holding that so long as the original debt remained in force, the promise was collateral and could not be enforced; others that an action would lie by the debtor, whose obligation was agreed for value to be discharged, but not by the creditor; others, again, the converse of both. For those see 4 Johns. R. 222; 7 Idem, 463; 3 Idem, 210; 8 Idem, 376; 10 Idem, 412; 15 Idem, 425; 18 Idem, 12.

In Farley v. Cleveland, 4 Cowan, 432, it was decided that "where the promise to pay the debt of a third person arises out of some new consideration moving to the promisor, either from the promisee or the original debtor, such promise is not within the statute of frauds, though the original debt still subsists, and remains entirely unaffected by the new agreement." That case

[King *v.* Shoemaker.]

was precisely analogous to the present in several particulars.   M. owed F. a note of $100, and M. gave to C. hay to the value of $250, in consideration of which C. promised to pay his note to F. The suit was by F. against C., and although the debt of M. continued in force, and there was no promise in writing, and no verbal promise made to F., yet he could maintain the action, and recover on the promise.   In the opinion, Chief Justice Savage carefully reviews most of the English and American cases; and the decision is unanimously affirmed in the Court of Errors in 9 Cowan, 639.

At a later period the question again arose in Barker *v.* Buckland, 2 Denio, 45.   There B., being indebted to the plaintiff, sold property to the defendant, who agreed to pay the price of it to the plaintiff on account of his demand against B.: held, that the plaintiff might maintain an action, and the promise need not be in writing under the statute.   The judge says, at p. 60, if the promise is made to the creditor to pay the debt due him by a third person, it is void by the statute; but a promise *to the debtor* for value to pay his debt to a third person need not be in writing, and the creditor can sue and recover on the promise.

The statute of frauds relates to promises made *to* the person to whom the debt is due, or to become due, and not to contracts made with the debtor himself to pay his debt or furnish him the means of paying it (25 Wend. 243, 247).   In the Court of Errors see also Eastwood *v.* Kenyon, 4; London Jurist, 1081.

And a verbal promise for value *to* the debtor to pay his debt due to a third person is binding, although the debt remains in full force (13 Wend. 115, Court of Errors; 10 Johns. 412; 15 Johns. 425; 18 Johns. 12).   Lippencot *v.* Ashfield, 4 Sanford, 611, goes still further.   Cashman was indebted to Lippencot. Ashfield promised L. that in consideration he had received property from Cashman, if he, L., would forbear to sue C. for one year, he would sell the property in his hands and pay the debt, and guaranteed that it should bring sufficient for the purpose; and held binding, and not within the statute.   The judge says, at p. 616, suppose the promise had been directly to the debtor, could there be a question as to its sufficiency and binding obligation?   Why shall not the creditor be permitted to sue on it and recover when made directly to himself?   We might have our doubts as to some parts of this case; but the following in the Court of Appeals seems to be better founded on legal principles (Brown *v.* Curtis, 2 Comstock, 229).   "The party promising does not undertake to pay the debt of another, but to pay his own debt in a particular way.   He undertakes, for his own benefit and for value received by himself, to pay the debt of another in discharge of his own, and it does not come within the statute." The case cites with approbation 4 Hill, 178, which decides " that

[King *v.* Shoemaker.]

wherever it is a new undertaking for value between the parties, and the promise is made *to* the debtor, it does not come within the statute." The question may probably be considered at rest in New York.

There have been many cases in Connecticut, but they seem to have settled down to this: The clause in the statute was intended to apply only to promises made *to* the person to whom another is answerable. Therefore, a promise to A. to pay certain debts which he owed his creditors, being a promise *to him and not to them,* does not come within the provisions of the statute (22 Conn. 317).

It is decided in 21 Maine, 410: "If a person promise, in consideration of funds placed in his hands by the debtor, to pay his debt, it is binding;" and there the promise was made to both the creditor and debtor. So also in New Hampshire (10 New Hamp. R. 32).

If the promise spring from a *new consideration,* it is held binding in New Jersey (1 Spencer, 337, cites 4 Cowan, 432 ; 5 Wend. 235).

Where the promise is in the nature of a new undertaking for value, it is held binding in Indiana (6 Blackford, 367).

In North Carolina it is decided that the original debtor must be discharged, else the promise is collateral. But it is otherwise if the party sued received property in trust to pay the debt (13 Iredel, 86).

The general principle of the New York cases appears to have been adopted by the courts of Massachusetts for a considerable period, excepting that it was held that the promise made *to* the creditor, even for a new consideration, was invalid unless evidenced by a writing. We shall not pretend to examine all the cases there decided, but come directly to Curtis *v.* Brown (5 Cush. 488), which is precisely parallel with our case in every particular. One Coffin owed Curtis, and agreed with Brown for a full consideration paid him that he should pay Curtis, which was made known to the latter, and he evidenced his assent by bringing suit; and it was held that the promise came within the statute of frauds, and was not binding on Brown. Chief Justice Shaw refers to some of the English and Massachusetts decisions, and says that where the original debt still subsists the promise to pay it must be in writing. He refers to several of their own cases, which scarcely sustain his general position, and also says that the only English cases where such a promise has been held good was where the creditor, in consequence thereof, had relinquished some lien or other right. In this, we think, he is in error; for few, if any, of the late English cases are put on that ground, but on the fact that the new promise is not made to the creditor, but to the debtor and the consideration paid by him. At an after time the

[King *v.* Shoemaker.]

same judge, in Alger *v.* Scoville (1 Gray, 291) appears to us to hold an entirely different doctrine, and to approve of the English and New York cases, which decide that the promise *to the debtor* to pay his debts for a consideration received of him is valid, though not in writing; and he cites with approbation Farley *v.* Cleveland (4 Cowan, 432), which in every particular is the same in principle as Curtis *v.* Brown (5 Cush. 488), which is also approved.

The cases of Farley *v.* Cleveland and Barker *v.* Burkland (2 Denio, 45) are our case in all its parts and rules it precisely. It also comes within the third class of cases mentioned by Kent, C. J. (8 Johns. 39). "When the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving between the new contracting parties."

We consider that the weight of authority is with the New York decisions, and shall adopt them for our guidance in this case, and they rule the two material points in favor of the plaintiff,—that he can avail himself of the promise made to his debtor to pay his debt, and such promise, even when not reduced to writing, is valid under the statute of frauds.

A release was executed by King to Harper on the trial of the cause, in order to render him a competent witness. Does that discharge the liability of Shoemaker?

The writing was certainly not intended to have that effect, as the design of the releaser was to look to Shoemaker on his new promise, he having, by the receipt of all the property of Harper & Reese, rendered the claim against them unavailing. Where a party has a right to look to either of two several obligors, bound by different and distinct contracts for the payment of his debt, the release of one will not discharge the other, especially if that other is the one who, in equity, ought to pay, and could in no event be entitled to subrogation or reimbursement, in whole or in part. We do not consider the plaintiff barred from recovering by the release, and shall therefore give judgment in his favor on the special verdict.

*Lamberton and Mumma, for plaintiff.*

*Kunkel, for defendant.*

NOTE.—This case was reversed in the Supreme Court. See Shoemaker *v.* King (4 Wright, 107). But, with all due deference to that august tribunal, we think erroneously, to judge from their later decisions, as well as those of most of the other States and the English courts. In Stoudt *v.* Hine, 9 Wright, 30, money was placed in a man's hands, under a promise on his part to pay a debt due by the person furnishing it to a third person. The latter was permitted to sue and recover his debt from the person so receiving the money— the promise was to pay his own debt for the new consideration—and yet the original debt remained. The creditor could have sued either. Clymer *v.* De

[In the matter of Denkel's Estate.]

Young (4 P. F. S. 118) was precisely like this case. A stock of goods was given to Clymer on his promise to pay the debt of Hunter to De Young, and held not within the statute. There was a new consideration viewed by Clymer, and therefore the promise was to pay his own debt, yet the original obligation continued in full force. See also the opinion of Judge Strong in Mawle v. Bucknel (14 Wright, at p. 51–52), and that of Judge Woodward, in Taylor v. Preston (29 P. F. S. 436), and many others might be cited to the same effect decided in this State since Shoemaker v. King. They and the cases in the other States go on the principle that for a new consideration the promisor agrees to pay what has become his own debt, and in very nearly all of them there was no discharge of the original obligation, but the creditor could have sued his original debtor or the subsequent pr