McIlvaine, O. J.
The 'bill of exceptions shows that the plaintiff in error contracted with one Everard to furnish all materials, and construct for her a-dwelling-house upon a certain lot owned by her, and in consideration thereof, she promised to pay said Everard a gross sum. In fulfillment of his contract with the plaintiff in error, Everard employed the defendant in error to furnish the materials and perform the labor of plastering said house, for which material and labor Everard agreed to pay the defendant in error a certain price per yard. After the building had been completed, except a very small part of the work of plastering, and after the plaintiff in error had .moved into the house, the defendant in error went to the house to finish the plastering, but finding the plaintiff in error in pos *334 ¡session, entered into an agreement with, hex’, and thereupon ■completed the plastering at a very trifling expense. This agreement (hereafter fully stated) is claimed to be the ground of her liability in the original action.
Although the bill of exceptions does not in terms show that ■all the testimony is set out, it concludes :
“ Whex-eupon the court found that what defendant said to plaintiff, as given in the bill of exceptions aforesaid, would make her liable as ox-igixxal px-omisox-, and liable to pay for said plastex-ing, as well that which was done befox’e as after said promise; and rendered judgxnent against ,'defendaixt for the ■sum of $100.91,. and declared the same a liexx on said premises described in petition, and ordered same sold to satisfy said judgment.”
The testimony referred to is as follows. The plaintiff below testified: “Sometime in the month of March or April, 1875, •one Job Everard met me in a blacksmith shop on St. Clair street, and said he had the job of building the house on the px-emises in the petition desciibed, and asked me how much I would do the plastering for. I told him I would lath and plaster it for 25 cents per yard, two coat work, and to be a cash job, as his sister, Mrs. Birchell, had the money in the bank to pay him (Everard). As soon as said house was ready fox-plastering, said Everard xxotified me, and I immediately px-o■ceeded to do the plastering, and completed the whole of the plastering with the exceptions of pointing up after the carpenter work had been completed, soxne plastering around the base, and finish putting on the putty coat in one closet, and finishing coat in one place ixx the hall; to have completed the whole, it would have taken one day and three-fourths. Witness demanded some money from Everard, who said that his sister, Mrs. Birchell, expected some, and would pay him (Everard). That witness held the key of said house, and that said house was locked, axxd that said Everard opened said house, and defendarxt, Birchell, moved in. That said witness then- went up to said house and found defendant occupying the house, and witness said to defendant, I will not go on and finish the plastering or give up the key unless you will pay me; and de *335 iendant said, ‘ Go on and finish the house and I will see you paid.’ That there was still left to complete said plastering, the putty coat in one closet and the putty coat in a portion of the hall, and considerable patching around the base board, and would take one and three-fourths days in all to complete it. That witness immediately went on and finished said plastering and demanded his pay from defendant (Birchell), who then said she had nothing to do with him (witness). This was about May 1, 1875. That witness had never met said defendant (Birchell), before that time, and never had any conversation with her before, neither did he know her before said conversation, and that was the first and only conversation he had with defendant, before said job of plastering was completed. 'That there were 550 yards of plastering, and it was worth 25 cents per yard, making a total of $137.50, and he had received from said Everard $40.00 and no more, and on the 25th day of June, 1875, witness filed his mechanic lien on the premises in .the petition described. Plaintiff also produced as a witness, Job Everard, who testified as follows:
“ ‘ I know the house in question. It is situated on the corner of Missouri and Division streets, in the city of Toledo, Ohio. I had the contract for building the house. Plaintiff done the plastering.’ On a cross-examination, said Everard testified: ‘ I made a contract to build the house with defendant, who is my .sister. I was to build the house, find. all the materials, and finish it complete and ready for occupancy for $850.00. Payments were to be made as I might want the money. After the plastering had been done, with the exception of a little patching up, I finished the carpenter work, and then went .and saw plaintiff and gave him the key of the house, and to.'d him to go and finish the plastering. That all there was to do was a little patching above the base board, which plaintiff would have to do, in his contract with me. 1 supposed plaintiff had done the patching before defendant had moved in the Bouse.’
“ The said plaintiff here having closed his testimony, the said ■defendant, Mary Birchell, to maintain the issue on her part, testified as follows, that is to say :
*336 “‘Sometime in February, A. I). 1875, I employed Job Everard, to build me a house on the premises in the petition described. He was to build the house, find all the materials, and have the house ready for occupancy for $850.00. The payments to be made as the work progressed. I remember the time Mr. Neaster came to my house. It was the next morning after we moved into the house. He said to me, ‘ if I goon and finish the house will you see me paid ? ’ I said, ‘ I will see it paid, but I cannot pay you, as I made a contract with Mr, Everard and I will pay him.’ This was all that was said at the time. Mr. Neaster went on and done what little there was to-do. It took two or three men about two hours to finish all there-was to do. There was then about two hundred dollars coming to Mr. Everard, which I paid him on the 26th of June, 1875. I had paid $650.00 April 26th previous, to Everard. I never saw plaintiff before the morning'after I had moved in the house. I did not know he was doing the plastering until that morning. I never hired Neaster to do the plastering of the house.’
“ The defendant here having closed her testimony, the plaintiff called James McKinley, Wm. E. McBain, and Joseph Mathews. Eacli of said witnesses testified they were present at the conversation referred to by plaintiff with defendant, and that said plaintiff said to defendant, ‘ I will not go on and finish the plastering unless you will pay me,’ and defendant said, ‘ you goon and finish the plastering and I will see you paid.’ ”
Upon this testimony the question arises, whether or not the agreement was within the statute of frauds, which provides, “ That no action shall be brought whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person, . . . unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or by some other person thereunto by him or her lawfully authorized.”
The line which divides promises which are original and unconditional, from those which are collateral and conditional, especially when the subject-matter of the contract is the pre-existing debt of another, is sometimes very difficult *337 to trace. The difficulty generally arises in ascertaining the true intent and meaning of the parties; but when these are ascertained, the plain meaning of the words of the statute must prevail. If the promise be collateral and conditional, it cannot be enforced, unless it be in writing.
It has been claimed that a new and distinct consideration passing between the creditor and the promisor, will take the promise out of the statute, though the original debtor remains liable. This cannot be the true test, as the statute can operate only on promises supported by a consideration ; because, promises, either in writing or verbal, unsupported by a considera^ tion, cannot be enforced, either under the statute or independent of it, and certainly the statute requires a promise to answer for the debt, miscarriage or default of another, though supported by a consideration, to be in writing..
It is unquestionably true, that whether or not the original debtor remains liable, is a very important fact in determining the nature of the new promise: but, after all, the controlling and ultimate question is, was the promise one to answer for'the debt, default or miscarriage of another, or was it an agreement to make the old debt the debt of the promisor.
In the case before us, 'Everard, the contractor, and debtor of the plaintiff below, was not released from his duty to complete the defendant’s building, nor discharged from his liability to pay the plaintiff for the entire work done by him. Now, when the words spoken by the defendant to the plaintiff below, which constitute the promise sued on, namely, “ I will see you paid,” are construed in the light of the circumstances, we can entertain no doubt that she meant nothing more, and was so-understood by the plaintiff, than that she would see that Everard paid the plaintiff’s claim, or, in other words, that she would pay the plaintiff if Everard did not. And such a promise is clearly within the statute of frauds.
■ Nor does the fact, that at the time the verbal promise was made, that the defendant below was indebted to Everard, the contractor and employer of the plaintiff, in a sum greater than the amount of the plaintiff’s claim against Everard, take the promise out of the statute.
*338 This fact does not bring the case within the principle of eases wherein it has been held that an agreement is not within the statute of frauds, where one man who owes another a debt, agrees with his creditor to discharge his obligation by assuming and paying the amount to a third person to whom the creditor is indebted. In such cases the promisor does not assume to pay the debt of another merely, but agrees to pay his own debt to a person appointed by his creditor to receive it. Barber v. Bucklin, 2 Denio, 45.
But here the consent of Everard, to whom the defendant below was indebted, was not obtained, to such transfer of his credit; and without such consent the defendant remained the debtor of Everard, to whom alone she was obligated to make payment.
It is true, the plaintiff below might, under favor of the mechanics’ hen statute, have subjected the money in the hands of the defendant and owing to the contractor to the payment of his claim for labor and material; but no steps to that end were taken. The only lien which the plaintiff sought to perfect under the statute, was one in favor of a principal contractor.
The claim of plaintiff in error, that the statute should have been pleaded, .is not well founded.
Judgments of the dist/riet court cmd of common fleas reversed / amd cause remanded to court of common fleas.