BaeNey, J.,
delivered the opinion of the court:
This suit comes to this court under the act of Congress of May 29, 1908 (35 Stat., 444, 445), which is as follows:
“ Sec. 2. That jurisdiction be, and hereby is, conferred upon the Court of Claims of the United States to hear, determine, and render final judgment, notwithstanding lapse of time or statute of limitation, for any balances found due, without interest, with the right of appeal as in other cases, upon the claims of H. W. Gilkey, Herman Hankwitz, Herman Hankwitz and Company, W. P. Cook and Brother, M. Wescott, J. A. Liege, assignee of J. F. Gauthier, F. F. Green, and the heirs of Mitchell Mahchikaniew, traders, against the Menominee Tribe of Indians in Wisconsin and against certain members of said tribe at the Green Bay Agency, for supplies, goods, wares, merchandise, tools, and live stock furnished certain members of the said tribe after the first day of January, in the year eighteen hundred and eighty, for the purpose of carrying on logging operations upon the Menominee Indian Reservation, in Wisconsin. *72 Said claims shall be presented to said court by verified petitions to be filed within six months from the date of the approval of this act. Said court shall, in rendering judgment, ascertain and determine the amount, if any, due upon each of said claims, and if the court finds that there is a liability upon any of said claims, it shall then determine if such liability be that of the said Menominee Tribe of Indians as a tribe or that of individual members of said tribe, and it shall render judgment for the amount, if any, found due from said tribe to any of said claimants, and it shall render judgment for the amounts, if any, found due from any of the individual members of said tribe to any of said claimants. Upon the rendition of final judgments, the court shall certify the same to the Secretary of the Interior, who shall thereupon, in case judgments be against the .said Menominee Tribe of Indians as a tribe, direct the payment of said judgments out of any funds in the Treasury of the United States to the credit of said tribe, and who, in case judgments be against individual members of said Menominee Tribe of Indians, shall, through the disbursing officers in charge of said Green Bay Agency, pay, from any annuity due or which may become due said Indian as an individual or as the head of a family from the United States or from the share of such Indian as an individual or as the head of a family in any distribution of tribal funds deposited in the Treasury of the United States, the amounts of such judgments to the claimants in whose favor such judgments have been rendered: jProvided, That not more than fifty per centum of the annuity due any such Indian as an individual or as the head of a family shall be applied to the payment of such judgments : Provided, however, That if more than one judgment be rendered against any such individual Indian and if fifty per centum of the annuity due such Indian as an individual or as the head of a family be not sufficient to discharge such judgments, such payment shall be made to the claimants in proportion to the amount of their respective judgments: Provided further, That in case fifty per centum of any annuity payment due any such Indian as an individual or as the head of a family be not sufficient to satisfy the judgment or judgments rendered against said Indian, then and in that case fifty per centum of subsequent annuity payments due said Indian as an individual and as the head of a family shall be applied to the payment of said judgments until the same be satisfied. The Menominee Tribe of Indians, through its business committee, is authorized to employ an attorney or attorneys to defend the interests of said tribe and of the individual members of said tribe in any actions brought under the provisions of this act, the compensation *73 of such attorney or attorneys to be determined by the court, and for which attorneys’ tees judgment shall be rendered, and upon its certification to the Secretary of the Treasury the amount of said judgment shall be paid to said attorney or attorneys out of any funds standing to the credit of said Menominee Tribe of Indians in the Treasury of the United States.”
The allegations in the petition are in substance as follows: The plaintiff and one Stacy were both duly licensed traders with the Menominee Indians, located upon the Menominee Beservation in Wisconsin.
In the fall of 1886 the members of said tribe being in want, destitute, and without available means of support, the Government authorized the Indian agent of the tribe to permit the members of this tribe to cut and sell the dead and down timber on said reservation, the proceeds to go to the benefit of said tribe and the individual Indians performing the labor in that behalf. These individual Indians, on account of their poverty, being without credit to obtain supplies during said logging operations, it was agreed by the Indian agent and the head men of the tribe that if the plaintiff and said Stacy would extend a limited credit to such Indians during such logging operations the same method of payment should be continued as had been agreed upon with the previous trader, one Wescott.
“ The head men, through their interpreter, pledged themselves for the payment of such supplies furnished, such pay-' ment to be out of the first proceeds of the sale of the logs, and thereupon it was agreed by and through the Indian agent and the head men of the Menominee Tribe to and with this petitioner and said Stacy that the Menominee Tribe of Indians would indemnify petitioner and said Stacy and assure the payment to them of all supplies so to be furnished by them.”
Pursuant to the foregoing arrangement the plaintiff and said Stacy furnished supplies to said Indians during said logging operations and up to some time in 1889, and received part payment for the same from said individual Indians. A portion, however, of the sums due for the supplies so furnished has never been paid, a schedule of which, amounting to $13,087.46, and charged to more than 150 *74 Indians in sums varying in amount from $1.55 to $827.17, is made a part of the petition.
The Indian agent received the proceeds of the logs which were cut by the Indians, and if such proceeds had been applied by him to the payment of the supplies so furnished they would all have been paid for, but they were not so applied, but how they were applied does not appear.
The logging operations and the credits extended by the plaintiff and said Stacy were for the benefit of said tribe, the members of which were thereby enabled to support themselves and families. There is a large fund in the possession of the Government to the credit of the Menominee Tribe of Indians derived through logging operations.
At the time of the said arrangement for the furnishing of supplies to said Indians said Stacy was the duly licensed trader with the Menominee Indians, and the plaintiff was employed by him to take full charge of the business aforesaid, with the consent and under the control of the Commissioner of Indian Affairs, with an agreement ratified by said commissioner by the terms of which the plaintiff was to receive one-half of the proceeds of the business conducted under the license of said Stacy. After the term of the plaintiff and Stacy as such traders expired some litigation arose between them, in which a receiver was appointed by the court and the assets of the business of said parties, including the claims involved in this suit, were purchased by the plaintiff.
The plaintiff avers generally that there is due him, either from the Menominee Tribe of Indians or from individual members thereof, the sum of $13,087.46, for which judgment is prayed.
The defendants have demurred to the petition: (1) On the ground that the jurisdictional act quoted is in violation of certain provisions of the Constitution; (2) on the ground that it does not state facts sufficient to constitute a cause of action; and such demurrer is now before the court for decision.
It will be seen that the jurisdictional act has no provision for making the United States a party to this suit, but the plaintiff concedes that the Government is a necessary party *75 and has made a motion to have it joined as a party defendant. Hence the appearance by demurrer of the Government is conceded to be regular. The demurrer goes to the alleged cause of action against (1) the Menominee Tribe of Indians, (2) the individual members of that tribe, and will be considered in that order.
The only averments in the petition which can be contended involve the Menominee Tribe in the litigation are (1) “ * * * It was agreed by and through the Indian agent and the head men of the Menominee Tribe to and with this petitioner and said Stacy that the Menominee Tribe of Indians would indemnify petitioner and said Stacy and assure the payment to them of all supplies so to be furnished by them. (2) * * * The logging operations conducted and the credits extended by him and Stacy were for the benefit of the tribe, they received the entire benefit thereof, and they were thus enabled to support themselves,” etc. We are instructed in the jurisdictional act to “ determine if such liability be that of said Menominee Tribe of Indians as a tribe or that of individual members of the tribe.” It appears to us that the promise or “ indemnity ” of the Menominee Tribe of Indians as alleged is but a promise to pay the debt of another, and clearly within the statute of frauds. There is no averment in the petition of any fact indicating that the credit for the goods sold was given to the tribe. In fact every averment shows that the credit was given to the Indians individually and the tribe was simply a guarantor. This suit is brought against these Indians individually in order to obtain a judgment against them for the same debt for which judgment is prayed against the tribe. It has been said that so long as the original debtor remains liable, so long as the plaintiff has a double remedy, one against the original debtor and one against the guarantor, the latter’s promise is within the statute (Brown on Statute of Frauds, secs. 198, 212; Moses v. Norton, 36 Me., 113), or, as it is sometimes stated, that when the original debt is not discharged by the subsequent promise it is a collateral undertaking and to be binding must be in writing (Russel v. Bobanek, 14 Me., 138). This is doubtless the general rule when the promisor is a naked guarantor. But there are *76 many exceptions to its general application, as when the purchaser of property promises to pay the price to a creditor of the vendor, such promise is binding, though not in writing, and the vendor still remains liable for the debt (Barber v. Bucklin, 2 Denio, 45; Dearborn v. Parks, 5 Greenlf. (Me.), 81); and where a debtor transfers funds or property to another for the purpose of paying his debt and the person thus holding the debtor’s funds or property promises the creditor to pay his debt, such promise is held good, though not in writing (Wait v. Wait, 28 Vt., 350), and in such cases both the original debtor and the guarantor are liable. It is said that in both of these classes of cases the guarantor in substance promises to- pay his own debt and not that of another, and, though-the original debtor still remains liable for the debt, his real relation is rather that of a surety to the party whose duty it is and who has promised to pay his debts. (Fullom v. Adams, 87 Vt., 391, 397.) There are other exceptions to the rule as stated, but the case at bar as stated in the petition does not fall within any of them. It is nowhere alleged in the petition that any part of the proceeds received for the logs which were cut went into the tribal funds. We have no hesitancy in deciding that under the averments in the petition the Menominee Tribe of Indians is but a naked guarantor for the debt of another, and such promise not being in writing is void under the statute of frauds.
It might further be added that it is very doubtful whether the “headmen” of the tribe, or the tribe in any manner, had any right to make such a contract as stated in the petition, even if it was in writing. (E. S., 2103-2106.)
We next come to consider whether this suit can be maintained against the defendant Indians as individuals.
The Government has always exercised guardianship control over the Indians and their tribal property, and Congress has often assumed the right to authorize and direct the Secretary of the Interior to adjust accounts between Indian traders and Indian tribes and individual Indians, and to provide for the payment of such sums as might be found due to such traders out of the tribal fund. (31 Stat, *77 L., 1065; 33 Stat. L., 208.) See also the report of the Secretary of the Interior, giving a detailed account of such settlement with the Osage Indians under the act of March 3, 1901 (31 Stat. L., .1065), and published in House Document No. 643, Fifty-seventh Congress, first session.
With such precedents to guide us we do not feel at liberty to deny the right of Congress to give jurisdiction to this court to adjust similar accounts, and to provide for payment in the same maimer.
The demurrer is sustained as to the Menominee Tribe of Indians and overruled as to the individual Indians named in the petition, with leave to the petitioner to amend his petition as he may be advised within 60 days from the filing of this order.