## MALLORY *vs.* GILLETT.

The plaintiff, having a lien upon a boat belonging to H., for repairs, amounting to $124.61, and refusing to give up the possession of the boat until the amount of his bill was paid, the defendant promised the plaintiff, verbally, that if he would deliver the boat to H. he, the defendant, would pay to the plaintiff the amount due to him for repairs, in manner following, viz: $50 in hand and the balance in two equal installments, at future periods. The boat was accordingly delivered to H. and the defendant paid the $50 in hand. In an action for the balance of the plaintiff's bill; *Held* that the agreement, being an undertaking to answer for the debt of another, and not being in writing, was void by the statute of frauds.

APPEAL from a judgment entered upon the report of a referee. The complaint alleged that before the time of making of the promise of the defendant, thereinafter mentioned,

Mallory *v.* Gillett.

the plaintiff, at the request of one William Haines, placed upon his dry dock in the town of Corning, the canal boat " *Metropolis*," and put repairs upon the same to the amount and of the value of $124.61, for the work and materials of such repairs, and whereby the plaintiff acquired a lien upon said boat for the amount of such repairs, to wit, the sum of $124.61, aforesaid. That said boat being still in the possession of the plaintiff, and he having still a lien thereon for the amount of said bill of repairs, refused to deliver the same to the said Haines until said sum of $124.61 should be paid. And thereupon on or about the first day of July, 1854, at Corning, in said county of Steuben, in consideration of the premises, and that the plaintiff would deliver up the said canal boat to the said Haines at the request of the defendant, he the said defendant then and there promised to pay the plaintiff the said sum of money due for said repairs, to the plaintiff, in manner following, to wit: fifty dollars in hand, and the balance in two equal installments, one to be paid in one month and one in two months, from the time of said promise. That thereupon the plaintiff, confiding in the said promise of the defendant, did deliver up the possession of the said canal boat to the said Haines, and that the defendant thereupon paid the plaintiff the sum of fifty dollars on the same agreement. That the plaintiff, confiding in the said promise of the defendant, has forborne to demand and collect of said Haines the balance due to the plaintiff as aforesaid, whereof the defendant had notice; whereby the defendant became liable to pay the plaintiff the balance of said demand, being $74.61 with interest, &c. Yet the defendant has not paid the same or any part thereof, but to pay the same or any part thereof hath hitherto refused and still refuses, concluding with a demand of judgment for $74.61, with interest, &c.

The defendant answered the complaint in substance as follows: 1. That the promise and agreement stated in the complaint was and is not in writing, nor was nor is any note or memorandum thereof made in writing, and that the same is therefore void by the provisions of the statute entitled " Of fraudulent conveyances and contracts, relative to goods, chat-

tels and things in action." The second defense set up in the answer need not be stated. The action was, by consent, referred to a sole referee. On the trial before the referee, the defendant admitted the facts stated in the complaint, as therein alleged, and withdrew the second defense contained in his answer. The plaintiff's counsel admitted that the promise and undertaking in the complaint mentioned, was not in writing, and that there was no note or memorandum thereof made in writing, as alleged in the first defense stated in the answer. The parties then rested, and the referee decided that the plaintiff was not entitled to recover in this action, on the ground that the promise or agreement alleged in the complaint and admitted on the trial, was not in writing, and was void by the statute of frauds ; to which decision the plaintiff's counsel excepted, and the referee thereupon, on the 25th day of February, 1856, made and filed his report in writing, whereby he found that no facts were proved or established by the plaintiff which were sufficient to enable him to maintain the said action, and that the defendant was entitled to judgment therein. Judgment was thereupon entered in favor of the defendant upon said report, against the plaintiff, with $45.67 costs, from which judgment this appeal was brought.

*Geo. T. Spencer,* for the appellant.

*Geo. B. Bradley,* for the respondent.

*By the Court,* WELLES, J. There is no doubt that the defendant's promise to pay for the repairs of the boat in this case, was valid and obligatory upon him at common law. The plaintiff parted with a substantial right, which was a sufficient consideration to uphold the defendant's promise. It was, however, a promise to pay a debt due from Haines to the plaintiff, with which, it does not appear, the defendant was in any manner connected. The debt was one which Haines had contracted, and which had become complete and absolute before the defendant promised to pay it. It was emphatically the debt of

Mallory *v.* Gillett.

Haines and not of the defendant; unless the transaction, disclosed by the admissions upon the trial, made it the defendant's debt.

The statute declares that "Every special agreement to answer for the debt, default or miscarriage of another person" shall be void, unless such agreement, or some note or memorandum thereof, expressing the consideration, be in writing, and subscribed by the party to be charged therewith. (2 *R. S.* 136, § 2.) In the case before us the agreement of the defendant was not in writing, and the question to be considered, is whether it belongs to the class which the statute declares void for that reason.

The first legislation upon this subject in England, was the statute of 29 Charles 2, chap. 3, § 4, which declares that no action shall be brought whereby to "charge the defendant upon any special promise to answer for the debt, default or miscarriage of another" * * * "unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized." The first statute of frauds in this state was passed on the 26th of February, 1787, the 11th section of which is nearly a literal transcript of the 4th section of the statute of Charles 2, above referred to. (1 *Greenl. Laws,* 385, § 11. 1 *R. L.* 78.) The only difference between the foregoing statutes and the law as declared in our revised statutes, is, that by the latter, the words "special agreement" are substituted for "special promise," and requiring the writing to express the consideration of the agreement. But the kind and character of the debt, the promise or agreement to pay which is required by the revised statutes to be in writing, is undeniably the same as that intended by our statute of 1787, and also by the statute of Charles. From the time of the enactment of the last mentioned statute to the present time, the books of reports abound in cases and adjudications upon questions arising, or being supposed to arise under it, and under our statutes, on the same subject. And it is to be confessed that there is not to be

Mallory *v.* Gillett.

found among them that harmony of judicial decision which is desirable. Many rules have been introduced and adopted by different courts and judges, by which to determine the application of the statute to particular cases; and it is to be feared that the ungraciousness of the defense in a clear case of a promise which would have been good at common law, has not, in some cases been without its influence.

The question has most frequently been, whether the agreement was original or collateral; and that has often been made to depend upon whether the agreement was founded upon a new consideration of benefit to the promisor, or harm to the promisee. Another criterion which has been resorted to in some of the reported cases, has been that the debt due from the original debtor to the original creditor, must be extinguished, in which case, the promise is original and valid without being in writing, but that if it continues subsisting, it is within the statute, and is void unless in writing. In my opinion, none of these are safe and reliable tests. The only inquiries in such cases should be; 1st. Was the promise valid at common law? 2d. Was it to answer for the debt, default or miscarriage of a person other than the promissor? and 3d. Was the promise in writing?

In the case at bar, the defendant's promise was to pay the debt of Haines to the plaintiff; nothing more, and nothing less. It was unquestionably valid and obligatory at common law, being founded upon a concurrent consideration of harm to the promisee, viz. the relinquishment by the plaintiff of his lien upon the boat for the repairs. If the statute had never been enacted, a consideration for the promise would have been just as necessary as it is under the statute, and no more so. As the debt of Haines was pre-existing at the time of the defendant's promise, a new consideration, concurrent with the promise, was necessary to support it, either at common law or under the statute, which only operates upon promises or agreements, which are valid, but for its provisions. It has wrought no change in the law, as to what shall constitute a valid agreement, but has respect only to the means by which the agreement shall be manifested. To hold, that in the case of

Mallory *v.* Gillett.

a previously existing debt, due from a third person, a promise to pay it is not within the statute because of some new consideration moving between the newly contracting parties, would be, as it seems to me, equivalent to saying, that if the promise be good at common law, a writing is unnecessary, and in effect, to disregard the statute, which contains no such qualification. (*Simpson* v. *Patten*, 4 *John.* 422. *Jackson* v. *Rayner*, 12 *id.* 291. *Barker* v. *Bucklin*, 2 *Denio*, 45. *Fish* v. *Huchinson*, 2 *Wils.* 94.) In *Buller's Nisi Prius*, a work of deservedly high reputation, it is said at p. 281, that " many of the doubts upon this statute have arisen, by making use of the word *collateral*, which is not a word used in the act of parliament. The proper consideration is, whether it be or not, a promise to answer for the debt of another ; for if it be, though it be upon a new consideration, and therefore, strictly speaking, not a collateral undertaking, yet it is within the statute."

In *Barker* v. *Bucklin*, (*supra*,) Jewett, J., who delivered the opinion of the court, says at pp. 59, 60, " It is difficult, it seems to me, to hold that a particular promise to pay the debt of a third person, is obligatory on the promisor, and not within the statute of frauds, although not in writing, because it is founded upon a new and distinct consideration. The idea of the necessity of a new consideration to uphold a promise of one person to pay another's debt, I apprehend, is only applicable, to such promise, made in a negotiation between the creditor and such person proposing to pay the debt of another to the creditor. There, it is well settled that a promise by such person, even in writing, to pay a debt already incurred, is not available if there be no new consideration." Citing *Chitty jun. on Contracts, ed. of* 1842, *p.* 52, and *Leonard* v. *Vredenburgh*, (8 *John.* 29.) The learned justice proceeds: " And where there is a new consideration for the promise by one to pay the debt of another, the promise is void by the provisions of the statute, unless the agreement or some note or memorandum thereof, expressing the consideration, shall be in writing.' Where the transaction is such, that the debt thereby becomes the debt of the promisor, then, indeed, if the promise be valid

at common law, an action may be sustained upon it, without a writing; for the reason that the promise is to pay his own debt; as, for example, where A. is indebted to B. and C. becomes indebted to A.; in consideration whereof, and at A.'s request, C. agrees to pay to B. the debt which he owes to A. And although, if C. fulfills his promise, the effect is to satisfy the debt due from A. to B., the promise of C. is, nevertheless, to pay his own debt. Such was the principle of the decision in *Barker* v. *Bucklin,* above cited, and of a large number of cases referred to by Jewett, J., in that case. But it will not do to say that the promise, although upon sufficient consideration, makes it the debt of the promisor, for that would dispense with a writing in all cases, and would, in effect, be abrogating the statute.

One of the earliest cases under the English statute upon this question is *Stephens* v. *Squire,* (5 *Mod.* 205,) where an action had been brought against Squire, an attorney, and two others, for appearing for the plaintiff without a warrant. The cause was carried down to be tried at the assizes; when the defendant promised that in consideration the plaintiff would not prosecute the action, he would pay ten pounds and costs of suit. It was objected that the promise was within the statute; but the court held that it could not be said to be a promise for another person, but for his own debt, and therefore not within the statute. The same case is found in *Comberbach,* 362, where Holt, Ch. J., is reported as saying, "if A. say don't go on against B., and I will give you £10 in full satisfaction of the action, this would be within the statute." In *Farley* v. *Cleveland,* (4 *Cowen,* 432,) the plaintiff sued the defendant in the common pleas of Washington county, declaring specially that one Moon, on the 22d of November, 1815, gave the plaintiff a promissory note for $100. That on the 1st of January, 1817, Cleveland, in consideration of 15 tons of hay, (value $150,) sold and delivered by Moon to him, at his instance, promised to pay the note of Moon to Farley. On the trial the above facts appeared, but the defendant's promise to pay the note of Moon was not in writing, for which reason the common pleas

Mallory. *v.* Gillett.

nonsuited the plaintiff. Upon a writ of error to the supreme court, the judgment of the common pleas was reversed, the court holding that the promise of Cleveland was not within the statute. The case was unquestionably decided right by the supreme court, for the reason that the promise by the defendant was to pay to the plaintiff his own debt which he owed to Moon. It cannot be upheld upon any other principle. I do not fail to notice that Savage, Ch. J., who delivered the judgment of the court, after reviewing the cases, at the conclusion of his opinion, says: "In all these cases, founded upon a new and original consideration, of benefit to the defendant or harm to the plaintiff, moving to the party making the promise, either from the plaintiff or the original debtor, the subsisting liability of the original debtor is no objection to the recovery." If the learned chief justice means by this, that a consideration of harm to the promisee, simply, unconnected with advantage to the promisor, is sufficient to take a case out of the statute, I must respectfully dissent from him. I cannot believe he intended any such thing. In all the cases which he cites in support of the decision, where the plaintiff was allowed to recover without a writing, the defendant might properly be treated as promising to pay his own debt, or where he had received a consideration from the original debtor which bound him at common law, either expressly or by implication, to such original debtor, or which would form a good consideration for his promise to the debtor to pay the debt to the plaintiff, in which case he would himself owe to the original debtor the payment of the debt of the latter to his creditor.

In *Barker* v. *Bucklin*, Jewett, justice, in speaking of the case of *Farley* v. *Cleveland*, says: "I agree that the case was well decided, but I think a wrong reason was given for it." And in another part of his opinion he says, (*p.* 58,) it was not the case of a promise to pay the debt of a third person.

The case of *Charter* v. *Beckett*, (7 *T. R.* 207,) was, in principle, much like the one under consideration. There, the plaintiff had brought his action against one Harris, for a debt due from Harris to him, and had incurred other expenses in attempting to collect his debt. The defendant agreed, in consideration

that the plaintiff would discontinue the action against Harris and accept a composition of 10s. in the pound upon his debt, to pay the composition and the said costs and expenses. The action against Harris was discontinued, and the defendant paid the composition. The action was brought against the defendant to recover the costs and expenses, amounting to £20 10. Lord Kenyon nonsuited the plaintiff on his opening, and the court of king's bench refused to set the nonsuit aside; holding that the agreement to pay the composition was within the statute, and not being in writing was void; and the agreement being entire, the plaintiff could not separate it, and recover on one part of it, the other being void. The case of *Slingerland* v. *Morse and others*, (7 *John.* 463,) is thought to be a strong authority for the plaintiff. In that case the plaintiff had distrained the goods of his tenant for rent in arrear, to the amount of $450, of which notice was given to the tenant, accompanied with an inventory of the articles distrained, but the goods were not removed. The defendants, at the request of the tenant, signed an agreement indorsed on the back of the inventory, as follows: "We do hereby agree to deliver to Peter Slingerland all the goods and chattels contained in the within inventory in six days after demand, or pay the said Peter 450 dollars. June 7, 1809." The ~~defendant~~ thereupon suspended the sale of the goods and left them in the house of the tenant. The plaintiff's counsel offered to prove a demand of the goods, and refusal, prior to the commencement of the action. It was objected that the agreement was a mere collateral undertaking, and as no consideration was expressed, or appeared on the face of the writing, it was void. The judge being of that opinion, rejected the evidence offered, and nonsuited the plaintiff. The supreme court set aside the nonsuit, holding that the agreement of the defendants was an original, and not a collateral undertaking; relying upon the case of *William* v. *Leper*, (3 *Burr.* 1886.) There is no principle upon which either the case of *Slingerland* v. *Morse*, or *William* v. *Leper*, can be upheld, except that of regarding the defendants in each as promising to pay their own debts. If they are treated as promises to pay the debt of the tenant

in each case, and not their own debts, the decisions, in my judgment, are indefensible and unsound, and directly in contravention of the statute. In the case in *Burrow*, Taylor, the plaintiff's tenant, had become insolvent, and had assigned all his goods for the benefit of his creditors, who employed Leper, the defendant, to sell the goods, and he accordingly advertised them for sale. On the morning of the day they were to be sold, William, the landlord, came to distrain the goods, which had not been removed from the tenant's house, for three quarters of a year's rent. Leper, having notice of the plaintiff's intention to distrain the goods, promised to pay the rent if he would desist from distraining; and he did thereupon desist. The question was whether this promise, not being in writing, was within the statute of frauds, and the court of king's bench held that it was not. Lord Mansfield said: "This case has nothing to do with the statute of frauds. The *res gestæ* would entitle the plaintiff to his action against the defendant. The landlord had a legal pledge. He enters to distrain; he has the pledge in his custody. The defendant agrees that the goods shall be sold, and the plaintiff paid in the first place. The goods are the fund. The question is not between Taylor and the plaintiff. The plaintiff has a lien upon the goods. Leper was a trustee for all the creditors and was obliged to pay the landlord, who had the prior lien." Wilmot, justice, remarked that "Leper was the agent of the creditors. He makes this promise in order to discharge the goods from this distress. I consider this distress as being actually made. Leper says, 'if you will quit the goods and disincumber the fund, I will pay you.' Leper becomes the bailiff of the landlord, and when he had sold the goods the money was the landlord's (as far as £45) in his own bailiff's hands. Therefore, an action would have lain against Leper, for money had and received to the plaintiff's use." Yates, justice, said: "The defendant was in possession of the goods and about to sell them. The plaintiff entered with intent to distrain them for £45. The defendant says, 'Let me go on and sell them and I will pay you the $45.' He undertook to pay this in all events, peremptorily and absolutely. This is an

original consideration to the defendant." Aston, justice, said: "If this was a promise to pay the debt of Taylor, I should think it within the statute, upon Sir Fletcher Norton's distinctions, which are the true ones. But I look upon the goods here, to be the debtor; and I think that Leper was not bound to pay the landlord more than the goods sold for, in case they had not sold for £45. The goods were a fund between both, and on that foot I concur."

It will be seen by the opinions of the several judges in the last case, that the liability of the defendant was put upon the ground that Leper was the agent of both the plaintiff and the other creditors of Taylor, and had in his hands a fund upon which the plaintiff had a prior lien; and upon that ground, I think the case was properly decided. It had become his own debt, which Leper, the defendant, promised to pay, and therefore was not within the statute.

Perhaps the case of *Slingerland* v. *Morse* can be placed upon the same or similar grounds. If it cannot, it was erroneously decided, and should not be followed. I incline to think that the goods of the tenant, in that case, were, in judgment of law, in the possession of the defendants. If they were, a fund was thereby provided by the original debtor, and placed at the disposal of the defendants, by which they had it in their power to fulfill the engagement they had entered into with the plaintiff at the tenant's request, and out of which arose an obligation on the part of the defendants, to the tenant, to perform one or the other of the alternatives of their agreement. If that is a just view of the case, it was properly decided.

It will not do to overlook, in this connection, the case of *Mercein* v. *Andrus and Mack*, (10 *Wend.* 461,) cited and relied upon by the plaintiff's counsel. On the trial of that case, the levy of an execution in favor of the plaintiff against one Reed, for $253.83, on the property of Reed, was shown; and it was proved that after the levy it was proposed that the defendants should indorse a note for Reid, payable at the bank, for $150, and that the property levied upon should be released. The case assumes

that the defendants were partners, although that is not stated as a fact proved. The property levied upon was released from the execution. The evidence tended to show that the defendant Andrus, in consideration that the property should be released, promised that the defendants should indorse the note of $150, but there was no evidence that the other defendant, Mack, agreed to the arrangement, except that the witness stated that according to his best recollection and belief, he was present and conversed on the subject, but he was not positive. His strong impression was that he was there. The defendants insisted that the promise being to pay the debt of a third person, and not being in writing, was void within the statute of frauds; and that Andrus could not bind his *partner*, except in partnership concerns. The circuit judge ruled that a promise, founded upon the consideration of surrendering up property levied on by execution, is an original undertaking, and need not be in writing; and upon the other point he instructed the jury that if they believed Mack was present at the time of the arrangement, and heard it made by his partner, the law would presume that he assented to it and he would be bound by it. The jury found for the plaintiff, and the supreme court set aside the verdict upon the ruling of the circuit judge in relation to the liability of the defendant Mack. Upon the other point, Savage, chief justice, says: "The judge correctly stated to the jury, that where the promise of one person to pay the debt of another was founded upon the consideration of surrendering up property levied on by an execution, the promise was an original undertaking, and need not be in writing to be valid; that it was not within the statute of frauds." This is all that is said by the court on the question now under consideration. No authority is referred to by the court or the counsel in support of the *dictum* of the chief justice. If it is sound, it in effect decides the present case for the plaintiff. In reference to the case, I remark, 1. That the remarks of the chief justice, above recited, are the merest *obiter dicta*, not necessary for the decision of the case, a new trial being granted upon another ground; and 2d. That it cannot be

and is not good law, being opposed to the letter and spirit of the statute, and utterly subversive of it. It assumes the promise to have been made to pay the debt of a third person, which the statute declares to be void unless in writing. If Reed had transferred the property levied upon to the defendants, or if they had made any valid contract with him to pay his debt to the plaintiff, and they had, in consideration thereof, promised Reed to pay it, then, manifestly it would have become their own debt, and no writing would have been necessary to make it obligatory upon them. But nothing of that kind appeared in the case, which could by possibility bring it within the principle of *Barker* v. *Bucklin*, before referred to. If the view of the chief justice is sound, there is no imaginable case of a promise to pay the pre-existing debt of a third person which needs a writing to make it valid; for whether the promise be in writing or by parol, a new consideration is equally necessary.

I forbear any further reference to authorities. It would be an unprofitable task to review all the reported cases upon the subject. To attempt to reconcile them would be hopeless. Those which I have referred to are taken from different periods since the enactment of the first statute on the subject, from among the earliest to the most recent. There are enough of high authority to sustain the views and the distinction I have presented, which I am satisfied are in accordance with the plain meaning and comport best with a just construction of the statute. It remains only to apply the statute as thus interpreted to the case before us.

I have already said that the promise by the defendant was to pay the debt owing by Haines to the plaintiff. If that was all, and nothing had occurred previous to or at the time of his making the promise, and aside from it, creating an obligation upon him, either to Haines or the plaintiff, it was most clearly within the statute, notwithstanding there was a consideration amply·sufficient to uphold the promise, either at common law or under the statute, if the agreement had been in writing. But we shall look in vain for any thing of the kind. The boat was not delivered to the defendant, and no means was put in his

hands by any one, from which to pay the plaintiff. The promise was to pay Haines' debt, and not his own. Suppose the facts in the case omitted the defendant's promise to pay the plaintiff, upon what would his obligation rest? It would be clearly without foundation or existence. If it was his own debt, the law would imply a promise to pay it. No one will pretend that he was liable to any person, aside from the promise. No consideration passed to him. But he promised to pay the debt upon a consideration, not of benefit to himself, but of harm to the plaintiff; good, clearly, but for the statute; but being a promise to pay the debt of another, it was void under the statute, by reason of not being in writing.

It follows, that the judgment entered upon the report of the referee should be affirmed.

Ordered accordingly.

[MONROE GENERAL TERM, March 2, 1857. *T. R. Strong*, *Welles* and *Smith*, Justices.]