## SUPREME COURT.

### HARLOW STODDARD agt. SAMUEL GRAHAM.

An agreement for an exchange of horses, with a right to rescind the bargain within a certain time, *vests the title* to the horses in the respective parties on the exchange, and the title remains in them until the agreement is fully rescinded. If the party who has a right to rescind, exercises that right properly and in time, and restores or offers to restore what he received, the *title revests in the other party*, and the party offering to rescind may recover back what he gave in exchange.

But where, as in this case, the defendant took from the bailee of the plaintiff, the horse he had exchanged with the plaintiff, in the absence of and without the knowledge of the plaintiff, and subsequently, on the same day, returned the horse and note received of the plaintiff to the residence of the plaintiff, and leaving them in care of the family of plaintiff's father, in the absence of the plaintiff,

*Held*, it not appearing that the plaintiff had in any way accepted the returned horse, and note, that these *ex parte* acts of the defendant were insufficient to divest the plaintiff of his title to the horse, which he acquired by the exchange, although the defendant claimed that under the agreement the plaintiff's warranty of his horse had failed, and he had previously given the plaintiff notice that he should rescind the bargain on that ground.

Besides, the plaintiff having paid a debt of the defendant, due to a third person, as boot-money on the exchange of the horses, as agreed between them, a *tender* of that amount by the defendant to the plaintiff was necessary *before suit brought*.

*General Term, Seventh Judicial District.*
JOHNSON, J. C. SMITH and WELLES, *Justices.*

*Facts as substantially alleged by the pleadings.*

THE plaintiff brought this action to recover a horse which he claimed had been wrongfully detained by the defendant. The defendant denied generally.   2d. Alleged that an infant son of the defendant, without his authority, exchanged horses with the plaintiff for a horse belonging to the plaintiff, and a note.   That when the exchange came to the knowledge of the defendant, he restored the horse and note received of plaintiff in the exchange, and recaptured and took the horse for which this action is brought.   3d. That on the said exchange the plaintiff falsely and fraudulently undertook and promised that the

Stoddard agt. Graham.

horse exchanged by him had only a slight touch of the heaves, which did not and would not injure the horse for business. That the horse so exchanged had the heaves so bad as to unfit him for business, and the plaintiff well knew it. That upon the discovery of the defect, defendant returned the horse and note, and took the horse in suit. 4th. That on or about the first day of May, 1860, the plaintiff induced the defendant's son to make the said exchange, and undertook and promised that the horse had only a slight touch of the heaves, and that they would not injure him for business, and if the horse was not as represented the horse might be returned, and the exchange should be null and void. That the horse had the heaves so bad as to unfit him for business, upon the discovery of which, the defendant returned horse and note, and took the horse given in the exchange. The cause has been twice tried, the first verdict having been set aside and a new trial ordered. Upon the last trial, the case was ordered to be heard by this court in the first instance, that the questions presented should be finally disposed of.

Plaintiff claimed that the following facts were established by the evidence.

1. That when the exchange was made, the bargain was that the plaintiff gave as boot-money a note he held against one Edget, which, if not paid then, the plaintiff was to give to the defendant $5, and also agreed to pay to his brother, Horace Stoddard, six shillings for fixing a dash to defendant's buggy, which had been repaired by plaintiff's brother, who was a carriage maker.

2. That the six shillings was by direction charged to plaintiff and credited to defendant on his (plaintiff's) brother's books, and afterwards paid by the plaintiff to his brother.

3. That after the trade was made between the defendant's son and plaintiff, the defendant used and worked the

mare received from plaintiff in the exchange, a number of days, and did not return her until she was sick.

4. That the mare in suit was taken by the defendant's direction from the possession of one Geer, to whom the plaintiff had lent her, and that the mare and note given by plaintiff in the exchange were not returned or offered to be returned until after the mare in suit had been taken from Geer.

5. That the six shillings paid by the plaintiff to his brother for fixing the wagon, was not paid or tendered to the plaintiff until some weeks after the taking of the mare in suit from the plaintiff by defendant, and after this action was commenced.

6. There is no evidence to show that the plaintiff knew the mare was any different from what he represented her to be.

7. That the mare died with lung fever.

There was some little dispute about the facts of the exchange, whether the defendant was to have the right to return the mare within two or three weeks or three or four days, the witness Elisha Graham swearing it was two or three weeks, and the plaintiff and Burke, (who was called as a witness to the bargain,) three or four days.

The defendant alleges in his answer the bargain to be as the plaintiff and Burke state, so far as the conditions were concerned.

The other facts necessary to an understanding of the questions will be sufficiently detailed in the points.

A. V. Harpending, *attorney, and*
Charles S. Baker, *counsel for plaintiff.*

I. It is submitted that the defendant could not first go to Geer's and take the mare traded to plaintiff, and afterwards return the mare and note received by him from the plaintiff in the exchange.

1. The general rule that a party who desires to rescind

a contract must restore all he has received under it, so as to put the other party in *statu quo*, is now too well settled to need any argument to support it. (*Voorhees* agt. *Earl*, 2 *Hill*, 288, 291, 292, 293; *Hogan* agt. *Weyer*, 5 *id.*, 389, 390, 391; *Moyer* agt. *Shoemaker*, 5 *Barb.*, 319, 322, 323, 324; *The Mattewan Company* agt. *Bentley*, 13 *id.*, 641, 644, 645, 646; *Wheaton* agt. *Baker*, 14 *id.*, 594, 597; *Masson* agt. *Bovet*, 1 *Denio*, 69, 73, 74, 75.)

2. The question here presented is as to the time when the property is to be restored. Must it be at the time or before the property is taken, or can it be restored afterwards?

It is submitted as a legal proposition, that the restoration must take place before or simultaneously with the taking of the property.

*a.* Any other rule would lead to confusion and injustice. If a rule should be adopted that the return might take place after the taking of the property by the party rescinding, then innumerable questions must constantly arise as to whether the same was in a reasonable time, and there will be no end to shifts and turns by designing parties to avoid the necessity of a prompt and complete return of property received in such cases. Upon principle, no right whatever should exist to take the property in such cases until the contract is wholly set aside or rescinded, and the parties placed in *statu quo*. So long as each party keeps possession of the property passed by the bargain made, neither should be allowed to retain what he has received without first restoring what has been given to him in the exchange. Would there be any doubt, that if the plaintiff had been at Geer's, he could by force have retained possession of his mare, at least until the defendant had restored what he had received from plaintiff in the exchange; or, if he had been there and forbid the defendant's taking the mare, and the defendant notwithstanding took her, and the plaintiff immediately before the defendant had returned

what he had received, had commenced this action, the defendant would have been liable, upon the ground that such taking was illegal ?   Then, if the taking was illegal, would a subsequent return of the property received in the exchange render it legal ?   It is believed but one answer can be made, that it would not.   The most that can be said is, that it might be given in evidence in mitigation, if proper for any purpose.

*b.* The rescission of the contract should be made to depend upon the acts of the party and be determined by them.   The defendant was bound to know the law, and that to entitle him to rescind, he must restore all that he had received.

*c.* The rescission of the contract does not so much depend upon the intention of the party as his acts in reference to it.   It could make no difference what a party had in his mind to do, unless he took the necessary steps to restore what he had received.   Until the property received by the defendant was restored, the contract was in force, and could by no means be rescinded until the property was returned or offered to the plaintiff.   The contract was not rescinded when the defendant took the mare, and he had no right to do so.   Until the rescission was complete, he had no authority to take the mare.   The defendant was a trespasser, and his subsequent return of the property received, is not a justification for such illegal taking.

*d.* If the rule laid down by the learned justice before whom the cause was tried, (and it is due to him to say, he did so with a great deal of hesitation and doubt,) in any case a party would be allowed to first go and hunt up property he had parted with under a contract, take it, and then go and get and return the property he had received, it might take a day or days.   There can be no difference in principle in such cases, whether it is an hour, a day, or a week.   The criterion must be, that the contract must first be rescinded before the right to take the pro-

Stoddard agt. Graham.

perty attaches; (see manuscript opinion of his honor Judge JOHNSON, fol. 6.) And as said before, the contract is not rescinded, but in full force, until the party restores what he has received from the other party, and placed him in the same position he was before the contract was made.

*e.* If this view is correct, the objections to the questions were well taken, and the overruling of the same by the court was error. The court should have directed judgment for the plaintiff, and the charge of the court was erroneous, and the exception thereto is well taken, and the judge should have charged as requested.

II. As the defendant, after he knew of the exchange made by his son, worked and used the mare, and there is no dispute about the facts, even if the defendant's son had no right to trade in the first instance, the defendant by such use ratified the bargain made between the plaintiff and defendant's son.

1. The only question is, what agreement did the defendant ratify? Surely it could not be as intimated by the court, what his son told him, but the agreement actually made between plaintiff and the defendant's son.

2. The defendant was bound, after it came to his knowledge that an exchange had been made, either to promptly disaffirm the contract *in toto*, or else put himself upon inquiry, and find out what agreement actually was made. He was bound to disaffirm, or else ratify the contract actually made for the exchange. Any other rule would operate unjustly. The defendant could not affirm the contract in part, or substitute what his son might say to him in the place of the original bargain for the exchange.

III. The court should have directed a judgment for the plaintiff when so requested, for the reasons therein stated. The judge also erred in his charge to the jury, and the exception thereto is well taken.

1. It was insisted upon the trial by defendant's counsel, and at last held by the court, that it was not necessary to

pay or tender to the plaintiff the six shillings agreed to be paid by the plaintiff to his brother, as a part of the boot-money on the exchange, because the agreement therefor was void by the statute of frauds.

2. With all due deference, it is submitted that the conclusion arrived at by the learned judge is erroneous.

*a.* It is now well settled in this state, " that an action may be maintained on a promise made by the defendant to a third person for the benefit of the plaintiff, without any consideration moving from the plaintiff; all that is necessary is, that the promise be made upon a valid consideration moving from such third person." (*Barker* agt. *Bucklin*, 2 *Denio*, 45, 47 *to* 61, *and cases cited; The Del. & H. Canal Co.* agt. *Westchester Bank*, 4 *id.*, 97, 98, 99 ; *Judson* agt. *Gray*, 17 *How. Pr. R.*, 289, 294, 295, 296 ; *this last case affirmed, court of appeals, March term*, 1859, *p.* 296, *cases cited; Earle* agt. *Crane*, 6 *Duer*, 564, 569 ; *Brown* agt. *Curtis*, 2 *Coms.*, 225 ; *Opinion*, BRONSON, J., *p.* 229 ; *Johnson* agt. *Gilbert*, 4 *Hill*, 178, 179, 180.)

*b.* It is submitted that this is just such a case, and not within the statute. Graham owed Horace Stoddard six shillings for fixing the dash to his buggy. Upon the trade, the plaintiff in this action, as a part of the boot money, agreed to pay these six shillings to his brother, and afterwards did so, (although it is believed immaterial whether he did or not, because if he was liable to his brother upon the promise in the first instance until discharged by him, he remained liable thereupon.)

*c.* The agreement was not within the statute, for the very obvious reason that it was not an undertaking to become surety, or to answer for the debt of another person, but an agreement on the part of the plaintiff to pay his own debt in a particular way. Instead of paying the six shillings, the boot money, directly to Elisha or defendant, he was to pay it to his brother, an original undertaking on the part of the plaintiff. (*Brown* agt. *Curtis*, 2 *Coms.*,

229; *Barker* agt. *Bucklin*, 2 *Denio*, 60; *Mallory* agt. *Gillett*, 21 *N. Y. R.*, 412, 453.)

*d.* It is not very clear from the case whose buggy it was upon which the repairs had been made, or to whom the credit was given by the plaintiff's brother—the defendant, or his son Elisha. Neither is it believed material, for, nothing can be clearer, that it was a sufficient consideration for the promise from the plaintiff to Elisha, that Elisha would make the exchange. The case in principle is just the same as if the plaintiff had promised to pay Elisha six shillings personally if he would make the exchange. (This is assuming as a fact plaintiff's brother charged the fixing of the buggy to Elisha.) Is there a doubt in such a case, Elisha having possession of a horse that belonged to his father, and endeavoring to trade with plaintiff, and the plaintiff should agree to exchange the horses, and also pay six shillings to Elisha personally if he would make the trade; that there would be a sufficient consideration to maintain an action by Elisha against the plaintiff for the six shillings upon such a promise? If this is so, then if Elisha owed plaintiff's brother for fixing the buggy, it was perfectly legal, and there was a good consideration to support it that the plaintiff should pay his brother, and the brother could maintain an action against the plaintiff upon the promise made to Elisha for the six shillings. (*Judson* agt. *Gray*, 17 *How. Pr. Rep.*; *Opin. Mason J.*, *p.* 295, 296; *Cleveland* agt. *Farley*, 4 *Cowen*, 432 *affirmed in error*, 9 *id.*, 639.)

In the case of *Judson* agt. *Gray* (*supra*), the learned justice well remarks, " Whatever may be said in regard to the rule in England, and there seems to have been great conflict over the question in Westminster Hall, the doctrine may be regarded as settled with us, that an action may be maintained on a promise made by the defendant to a third person for the benefit of the plaintiff, without any consideration moving from the plaintiff. All that is

required is, that the promise be made upon a valid consideration moving from such third person."

Can it be doubted that an agent having property of his principal to exchange, could legally exact a binding promise from a party whom he should make an exchange, that as a condition thereof the promisor should personally pay to such agent a certain sum? Elisha was merely the agent of his father in the exchange, and the promise of plaintiff to Elisha to pay the six shillings inured to the benefit of plaintiff's brother, and remained a legal and binding promise upon the plaintiff, until he should in some manner be released or discharged.

. e. If it could make any difference, the proof shows that the plaintiff paid the six shillings to his brother for fixing the dash, before it was offered to be paid back by defendant.

f. But as Elisha was a minor, probably the credit was given to his father, the defendant. It can be of no importance to whom the charge was made. The promise made by the plaintiff to pay the six shillings, was founded upon a good consideration moving between the parties, and was a subsisting liability against him, and which he had paid at the time the defendant took the mare, and without paying or offering to pay back the six shillings to the plaintiff. The defendant had not placed the parties in *statu quo*, and clearly under the authorities cited in point I., had no right to take the mare from plaintiff's possession. The six shillings was not tendered back until days had elapsed after this suit was commenced, and after the rights of the respective parties had become fixed.

g. As is mentioned in point II., the defendant was bound to restore all that was received under the original contract for the exchange. It would be no excuse for him to allege that he did not know anything about the payment of the six shillings. He was bound at his peril to ascertain what the contract really was, and disaffirm *in toto*, if at all.

h. If necessary, the proof shows that the defendant

knew about fixing the dash. The defendant says, "I don't recollect what was said about the dash; I heard about it." The exceptions taken at fols. 45, 36, should have been sustained by the court.

3. If this point is well taken, it is an end to the case; although·it is believed numerous other errors were committed sufficient to grant a new trial.

DANIEL MORRIS, *for defendant.*

I will notice each exception to the charge of the court in its order.

Exception No. 1 is at folios 201, 202, 203.

I. I admit, when a party wishes to rescind an agreement, he must restore all he has received. But when?

II. But in the case at bar there is an agreement expressed that the party may rescind if the warranty fails. The moment this is discovered, and the party elects to rescind and so notifies the party, the bargain is null, and the parties are bailees of the other's goods. The defendant's right to his property did not depend upon a return of what he had got, but upon another contingency.

III. I submit, under the agreement of the parties, if the defendant had informed the plaintiff, as he did, of his election, and then have taken his horse, and before he could have returned the horse of the plaintiff's and the note, the defendant might, even after suit was brought, have returned them, and then have set up the fact in his answer. (*See* 23 *N. Y. R.*, 264.)

IV. But there can be no question of the right to return at any time before suit is brought. In the case at bar it was all one transaction, and the precise order is of no consequence, unless an injury was wrought.

Exception No. 2 is at folio 204. The jury, by their finding, establish the fact that the defendant had a right to re-exchange. The court direct the jury that they must

find this fact first, or else the plaintiff is entitled to a verdict. Hence,

I. Stoddard had no right to pay his brother, nor was he expected to pay him until the period of the trial of the horse had elapsed. The defendant had a right, under the agreement, to understand that the plaintiff could not pay it till the time elapsed; and there is no evidence that he did pay the six shillings before the mare was returned. If he paid it after the mare was returned it was his own folly, and he is estopped from taking advantage of his own act.

II. There is no evidence that the defendant ever heard anything about this six shillings when he returned the horse and note; and all the evidence shows the debt to Horace Stoddard was Elisha Graham's and not the defendant's.

III. From the evidence of Elisha it is evident the plaintiff did not pay the six shillings at the time of the exchange. And it is further evident, that at the time of taking the mare, he nor the defendant could suppose it had been paid; hence, they were not bound to tender the six shillings to the plaintiff. His liability to his brother depended upon a contingency, and that contingency released him from liability.

III. From all the evidence it appears the plaintiff became responsible or undertook to answer for the then existing debt of Elisha Graham, which undertaking was void and of no force. But,

IV. Suppose the agreement as between plaintiff and Elisha bound the defendant, what then? It was of no greater force than if Harlow Stoddard had given a promissory note for that amount. This no one will pretend. The court, in 23 *N. Y. R.*, 264, settle the law in such a case, and it appears Elisha tendered the plaintiff and left the tender in the sheriff's hands.

V. There can be no doubt from the evidence, that Graham has been and now is liable to Horace Stoddard for fixing said buggy.

Exception No. III. is at folio 206.

Stoddard agt. Graham.

The court submitted to the jury to say what the contract was, and also what the defendant acted upon as the bargain, leaving it wholly to the jury.

Exception No. IV. is at folio 208. The only question here is one of law, and I apprehend the court was clearly right. This was plaintiff's horse, and where he kept his horses, and he was informed of the fact a few moments afterwards. If this was not a sufficient return, then all plaintiff had to do was to absent himself, and thus defeat his agreement.

Exception No. V. is at folio 211.

I cannot see any force in this exception, and shall pass it without comment, as also all the other exceptions, which are a mere repetition of what had preceded them.

By the court, JAMES C. SMITH, Justice. By the terms of the contract, as established by the evidence given on both sides, the defendant had a right to rescind if the mare he got of the plaintiff was not as recommended; and the jury have found that the mare was not as recommended, and that the defendant undertook to rescind within the time agreed upon for that purpose. But it appears, also, without dispute, that the defendant, in order to rescind, *first* took from the possession of a bailee of the plaintiff the mare which he had let the plaintiff have, and shortly afterwards delivered at the residence of the plaintiff, in his absence, the mare and the note which he had received from the plaintiff in exchange.

The jury were instructed that they might properly consider the taking of the mare in question by the defendant, and the return of the mare and note received of the plaintiff as concurrent acts, and that it was of no consequence which occurred first in the order of the transaction, provided it was one continuous transaction, and was so intended by the defendant.

The learned judge, in giving this instruction to the jury,

expressed much doubt as to its correctness; and I am of the opinion that the exception to it is well taken.

When this case was before the court at special term, on a motion to set aside the first verdict, a construction was given to the agreement in which I fully concur, and which I think was departed from at the last trial. It was then said, in the opinion pronounced, that "there can be no doubt that, upon such an agreement, where the property is delivered, the title vests in the purchaser and remains in him until the agreement is fully rescinded. If the right to rescind, according to the agreement of sale, accrues to the purchaser, and he exercises it properly and in time, and restores or offers to restore what he received, the title revests in the seller, and the purchaser may recover back what he paid upon the purchase or what he gave in exchange. It is altogether different from the case of an article taken on trial with the right to return at the mere option of the purchaser. In such case, the bargain is not complete until the trial is made and the option exercised, and no title vests. But the right of rescission, from its very nature, implies a complete bargain, and a title vested in the party rescinding. The right to return or rescind here was fixed by the agreement of the parties in which each was interested, had the right equally to be heard. These views are decisive of the question before us.

The defendant could not have maintained an *action* to recover the possession of the mare which he let the plaintiff have, without *first* restoring or offering to restore all that he had received in exchange for it. If he had made such offer, the plaintiff would have had an opportunity to decide for himself, as he had a right to do, whether he would accept the offer, or leave the defendant to his legal remedy. He might think the contingency had not arisen which, by the terms of the contract, gave the defendant a right to rescind, or that the mare which he let the defendant have, had been injured by his fault or negligence. If, for these

reasons, though unfounded, or for any other satisfactory to him, he preferred to retain possession of the mare, and leave the defendant to his action, it was competent for him to do so. The title to the mare passed to the plaintiff by the original exchange, and the defendant's right to rescind springs exclusively from the contract, which, in this respect, is in the nature of an agreement by the plaintiff to sell the mare to the defendant on the happening of the specified contingency. If the defendant can avail himself of the right of rescission in the mode adopted by him, and thus transfer the title from the vendor to himself, it seems to follow that in every case of an executory contract for the sale of personal property, the vendee may compel its performance, by seizing and carrying away the property from the possession of the vendor, and subsequently tendering him the purchase money.

The mare and the note which the defendant returned, were not delivered to the plaintiff personally, but were left in his absence, at his father's house, where he resided, and it does not appear that he accepted them, or in any manner treated them as his.

I do not think these *ex parte* acts of the defendant were sufficient to divest the plaintiff of his title to the mare which he acquired by the exchange.

It seems to me equally clear that the defendant was bound to pay or tender the sum which the plaintiff paid for him to his creditor, Horace Stoddard, and that the tender after suit brought was unavailing.

The jury were instructed that such payment or tender was not necessary, for the reason that the plaintiff's agreement to pay the defendant was void by the statute of frauds. This ruling assumes that the agreement was unexecuted, but even on that hypothesis it seems to me erroneous.

The evidence shows that at the time of the trade, the defendant was indebted to the plaintiff's brother, Horace

Stoddard, for repairing a wagon; that the plaintiff agreed, as a part of the trade, to pay the debt, if it did not exceed one dollar; that immediately after making the agreement, the parties went together to the shop of Horace Stoddard, to ascertain the amount; that they informed him they had agreed to trade horses, and the plaintiff told him that he was to pay the debt as a part of the "boot-money," and that Horace could look to him for pay; that Horace charged it to the plaintiff; and that the parties shortly after exchanged horses.

By an arrangement *between the three*, the debt due from the defendant to Horace Stoddard was extinguished at the request of the plaintiff, in consideration whereof the plaintiff agreed with Horace to pay it, and the plaintiff, by *assuming* the debt, must be considered as having paid that amount to the defendant. (5 *T. R.*, 174; *Wilson* agt. *Coupland*, 5 *Barn. & Ald.*, 228; *Heaton* agt. *Angin*, 7 *N. H.*, 397.) And the plaintiff's undertaking is not to pay the debt of a third person, within the meaning of the statute of frauds. (4 *Cow.*, 432; 2 *Den.*, 45; 3 *Barb.*, 209; 6 *Duer*, 564; 2 *Bosw.*, 392; 19 *Barb.*, 258; 23 *Barb.*, 610, *S. C.* affirmed; 21 *N. Y. R.*, 412.)

But the agreement was not unexecuted. It appeared by the defendant's showing, that the plaintiff had in fact paid the debt to Horace Stoddard, by making a turn with him, before the defendant tendered him the amount.

I think there should be a new trial, costs to abide the event.