THE FIRST NATIONAL BANK OF SING SING, RESPONDENT, *v.* THOMAS H. CHALMERS AND GEORGE W. MURRAY, APPELLANTS.

JAMES L. WHEELER AND JOHN F. MILLER, RESPONDENTS, *v.* SAME, APPELLANTS.

*Consideration — an agreement to assume the liabilities of another cannot be enforced by the creditor unless supported by a consideration.*

In the fall of 1882, Spruce & Leary, manufacturers of files in Sing Sing, were financially embarrassed, their principal creditors being the defendants Chalmers & Murray, whose indebtedness was secured by mortgages covering all the debtors' property, both real and personal.

On November 1, 1882, a judgment in favor of Chalmers & Murray for $13,798.74 was entered by confession against Spruce & Leary; $11,463.12 of that amount being for money due and to become due to the judgment creditor, and $2,335.62 for liabilities of the debtors to others persons which were severally specified in the statement as "liabilities assumed." After an execution had been issued on this judgment, under which a levy had been made upon certain articles of personal property, the judgment was set aside on the motion of a junior judgment creditor.

The mortgages upon the real and personal property of the debtors were subsequently foreclosed by Chalmers & Murray and all the property was sold to them. They received no property at the time of the confession of the judgment, nor did they receive any property or anything under the judgment or by virtue of it.

*Held,* that there was no consideration for an assumption by the defendants of the liabilities specified in the confession of judgment, and that the holders and owners thereof could not maintain actions against the defendants to recover the amount thereof.

APPEAL from judgments, entered upon the trial of these actions by the court without a jury.

The actions were brought by the plaintiffs, who were creditors of the firm of Spruce & Leary, to recover the amount of their respective claims from the defendants who were alleged to have assumed to pay the same by the terms of a judgment, entered in their favor upon the confession of the said firm of Spruce & Leary.

*C. Frost,* for the appellants.

*Francis Larkin,* for First National Bank of Sing Sing, respondent.

*Smith Lent,* for Wheeler & Miller, respondents.

DYKMAN, J.:

Spruce & Leary were file-makers in Sing Sing, and were copartners in that business. In the fall of the year 1882 they found themselves in financial embarrassment, with the defendants Chalmers & Murray as their creditors to whom they owed the largest amount. All their goods had been sold to the defendants as they were manufactured, at stipulated prices, and they received credit for them in their account. Beyond paying for such manufactured goods, the defendants gave notes to Spruce & Leary to assist them in conducting their business until their indebtedness amounted to a large sum, which was all secured by mortgages to the defendants on all their real and personal property. Spruce & Leary were also indebted to

the bank of Sing Sing and Wheeler & Miller, the plaintiffs in these two actions.

On the twenty-ninth day of October, 1882, the defendant Chalmers and Mr. Leary met in consultation and the situation was discussed between them, and Leary manifested a disposition to do whatever was suggested by Chalmers, but desired the claims of the bank and Wheeler & Miller to be secured. No definite plan was arranged, and nothing was then said about a confession of judgment. On the morning of the succeeding day, Chalmers again went to Sing Sing with a lawyer, and then a confession of judgment from Spruce & Leary to the defendants was drawn and executed. It was for $13,798.74 in all, $11,463.12 of the amount being for money due and to become due to Chalmers & Murray, and $2,335.62 for liabilities specified and put down in the statement as liabilities assumed, and they were assumed by Chalmers & Murray in no other manner. Judgment was entered on this statement November 1, 1882, and an execution was issued thereon and delivered to the sheriff December 23, 1882, who made a levy under it on ten grindstones December 27, 1882. That judgment was set aside on motion of a junior judgment creditor of Spruce & Leary, December 2, 1883, and the execution withered and died in the sheriff's hands. There was no sale under it and nothing was made or realized from the judgment in any way.

After the confession of judgment the property remained as before. Spruce continued the business and finished the goods then in process of manufacture, and sent them to Chalmers & Murray, who received them and gave credit for them to Spruce & Leary in their account the same as they had previously done. After all the goods then in process were finished, Chalmers & Murray furnished material, hired the factory and employed Spruce and continued the business until May, 1883.

All the personal property on the premises was covered by the chattel mortgage to Chalmers & Murray, and in May, 1883, they foreclosed the same and the property was all sold, and they became the purchasers at the public sale. Subsequently the mortgages on the real property were foreclosed and the property was sold, and they became the purchasers.

It appears that seven or eight grindstones were sold under the

execution issued on the junior judgment already mentioned, and Chalmers & Murray became the purchasers.

So it is shown affirmatively and conclusively that all the property of Spruce & Leary which ever came to the hands of Chalmers & Murray, aside from the merchandise sold and delivered to them, and paid for by them, came to them as purchasers at the foreclosure sales and the sale of the grindstones under the execution.

At the time of the confession of judgment they received no property, and they never did receive any property or anything under the judgment, or by virtue of it or on account of it, in any sense or in any manner.

In the statement or confession on which the judgment was entered in favor of Chalmers & Murray, under the head of liabilities assumed, comes these words: "Money due by Charles Spruce & Co. to Fifth National Bank of Sing Sing on overdrawn account, $1,556.47 ; money due Wheeler & Miller for coal to date, $391.47 ;" and these two actions are now brought by those parties against Chalmers & Murray for the recovery of the amounts due them respectively. The causes were tried before a judge without a jury, and judgment was awarded to the plaintiffs, from which the defendants have appealed.

The cases are considered together here, for the same testimony and the same state of facts substantially obtain in both. It should be stated further that the defendants have in no way received sufficient to pay them their claims against Spruce & Leary.

These actions were instituted and prosecuted on the theory that the confession of judgment was itself a sufficient consideration for the assumption of the claims of these plaintiffs by the defendants, and the counsel for the respondents in both cases stand boldly and defiantly on that ground on this appeal. In the first place it is to be noticed that there is no evidence of a promise or agreement by Chalmers who conducted the negotiations to pay these claims previous to the execution of the confession. Leary who was placed in examination by the plaintiff, and who was the only person who could speak on the subject besides Chalmers, fails to testify to such agreement before the interview with Noxen, which was subsequent to the confession.

In the Bank case the trial judge found that the promise to pay

was made on the same day of the confession, and that has some support in the proof of the interview with Noxen, and in the other case it was found that such promise was made previous to the execution of the confession. These two dissimilar findings are based alone on the testimony of Leary, and that furnishes no support at all for the latter which is against the uncontradicted testimony of Chalmers. But the fact itself has no control of the case and is quite immaterial. Both claims were assumed by their insertion in the statement and in no other manner, and if that rendered their payment obligatory upon the defendants these actions may be maintained, otherwise they cannot.

In the Bank case it was found by the trial judge that the confession of judgment was made upon the promise of the defendant to assume the liabilities set forth in the statement. If by that is meant more than an assumption by their insertion in the statement it is without support in the proof. Let us now inquire what, if any, liability was imposed upon the defendants by the insertion of these two claims in the statement for judgment as "liabilities assumed."

Again, in the case of the bank, but not in the other case, the trial judge has found that by the confession of judgment the defendants acquired title to a large amount of property belonging to Spruce & Leary, upon which the defendants had no lien, and appropriated the proceeds thereof to their own use; but we have already seen that the uncontradicted testimony, most of which was documentary, proved beyond controversy or doubt that the mortgages held by the defendants covered all the property of Spruce & Leary. The defendants, therefore, had a lien on all the property. Besides, the defendants obtained nothing by the confession of judgment in any way. They foreclosed their mortgage and bought in the property and bought in the grindstones at the sale under the junior judgment. They received nothing from Spruce & Leary. They neither obtained possession nor obtained title to any property from Spruce & Leary for which they were under obligation to pay them, or in any manner which created the relation of debtor and creditor between them. They never owed Spruce & Leary any money for anything. Of course, the purchase of manufactured goods is excluded from this view; what is intended is that the defendants neither at the time of the execution of the confes-

sion of judgment, nor at any subsequent time, received property from Spruce & Leary for which they were bound to pay as between them.   All they ever obtained or made from the property of Spruce & Leary was received in payment of their claim against that firm. But it is the theory of the counsel for the plaintiffs that the confession of judgment alone was a sufficient consideration, because that was property which the defendants received for their assumption of these claims therein.   In support of this position they invoke the authority of *Judson* v. *Gray* (17 How., 390), where the defendant, who was the attorney for a party to a suit, requested his client to give him a promissory note for the amount of the fees due the plaintiff as referee in the case, with a promise that he would thereupon pay the plaintiff his fees, and the note was given accordingly. The court very properly allowed a recovery, but no new doctrine was announced, as we can see by the language of the opinion : " The agreement in question having been made for the benefit of the plaintiff on a sufficient consideration, and having been adopted by him he can maintain this action against the defendant upon such agreement.   It is not necessary that the money should actually come into the defendant's hands to render him liable.   Any property which he may receive is a good consideration for his agreement to pay."   *   *   *   " The note of Absolom Calkins was a valid security in the hands of the defendant, and a good and sufficient consideration for his promise to pay Calkins' debt to the plaintiff."

The case is in alignment with its class and goes in full harmony with *Barker* v. *Bucklin* (2 Denio, 45); *Cleveland* v. *Farley* (4 Cow., 432, and 9 id., 639); *Lawrence* v. *Fox* (20 N. Y., 269), and *Burr* v. *Beers* (24 id., 178).   In all these cases something of value was received by the promisee imposing a liability upon him arising from a new and distinct consideration, which he undertook to discharge in accordance with his new promise, so that the new agreement was for the payment of his own debt on the discharge of his own obligation, which by an arrangement with his promisee he agreed to pay to the creditor of the latter.   But in this case the defendants received nothing from Spruce & Leary creating any obligation which they were bound to discharge.   No property or thing of value came to their hands for which they could be so required to account.   They owed nothing which they could promise

to pay, for they acquired nothing, and certainly an indebtedness or obligation to Spruce & Leary was a condition precedent to any liability to their creditors, otherwise their assumption of the debt would be a mere agreement to advance and not within any adjudicated case.

The judgment taken by the defendants was, at most, but a security to be enforced as a lien, and is therefore like the mortgage in the case of *Garnsey* v. *Rogers* (47 N. Y., 233). In that case there was a stipulation in the mortgage whereby the mortgagee assumed and agreed to pay a prior mortgage on the premises, and it was held that the stipulation imposed upon the mortgagee no personal liability for the prior mortgage debt which could be enforced against him by the prior incumbrancer.

The reasoning of the opinion in that case is entirely applicable here: "Where he (the promisor) takes only a mortgage he owes no money for this land which he can promise to pay to the prior mortgagee, for he does not acquire title to the land. To become a debtor to any one he must owe a debt." Again, it is said: "But in the case of a party having the land merely as security, such an undertaking is simply a promise to advance money to pay the debt of his grantor or mortgagor." "If such a contract could be enforced by the creditor who would be incidentally benefited by its performance, every agreement by which one party should agree with another for a consideration, moving from him to become security for him to his creditors to advance money to pay his debts, could be enforced by the parties whose claims were thus to be secured or paid. I do not understand any case to have gone this length."

This is an authority decidedly antagonistic to the contention of the counsel for the plaintiff, and the case of *Demming* v. *Leavitt* (85 N. Y., 30) is like unto it, for it was there held that a person for whose benefit a promise is made cannot, within the case of *Lawrence* v. *Fox*, maintain an action to enforce the promise when the promise is void as between the promisor and promisee because of want or failure of consideration or fraud, and this is in the opinion: "But I know of no authority to support the proposition that a person not a party to the promise, but for whose benefit the promise is made, can maintain an action to enforce the promise where the promise is void, as between the promisor and promisee, for fraud or want of consideration or failure of consideration."

It was also fully asserted in that case that it would be contrary to justice and good sense to permit a party who comes in under "the privity of substitution," asserting a derivative right to acquire a better right against the promisor than the promisee himself had, and that is exactly what the plaintiffs in this case will do if they can maintain these actions, for it is entirely clear that Spruce & Leary acquired no rights against the defendants by the confession of judgment, and so the plaintiffs can derive no rights from them, for they had none to bestow. Plainly the elements essential to a recovery against these defendants are not present. They are not debtors of the plaintiffs, and Spruce & Leary are, and if they now pay these claims they have no recourse against the defendants for no demands exist in their favor.

In the beaten way of justice there is no reason why these defendants should pay these claims. On the contrary, it would be inequitable and unjust to oblige them to do so. Neither the plaintiffs nor Spruce & Leary have parted with anything or surrendered any right. The liabilities were against Spruce & Leary, and no duty rested on the defendant for their payment. The effect of the order setting aside and vacating the judgment is not determined, because our examination shows that at its best it conferred no rights on the plaintiffs and imposed no liability on the defendants. These views are not antagonistic to the opinion of this court, delivered when the case was here before. Then it was held that if the agreement was that the debtors' property should be transferred to the defendants, and they in consideration thereof received the property, and it was worth enough to pay all the claims secured by the judgment, then there might be a recovery, and we now refuse a recovery because no such facts are established and the contrary state of facts is clearly shown.

In no view can these actions be maintained, and the judgments in both cases should be reversed and a new trial granted, with costs to abide the event.

PRATT, J., concurred; BARNARD, P. J., not sitting.

Judgment in each case the same, viz. : Judgment reversed on questions of both law and fact, and new trial granted, costs to abide event.